UNITED STATES of America, Plaintiff-Appellee,

v.

Arshad Ali MALIK and Khalid Yousaf Malik, Defendants-Appellants.

Nos. 81–2092, 81–2093.

United States Court of Appeals, Seventh Circuit.

Argued April 12, 1982.

Decided June 15, 1982.

Rehearing and Rehearing En Banc Denied Oct. 5, 1982.

Steven M. Levin, Chicago, Ill., for defendants-appellants.

Sheldon Zenner, Asst. U. S. Atty., Dan K. Webb, U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before BAUER, Circuit Judge, GIBSON,[*] Senior Circuit Judge, and POSNER, Circuit Judge.

GIBSON, Senior Circuit Judge.

Arshad Ali Malik and Khalid Yousaf Malik appeal their convictions and sentences relating to the importation and distribution of heroin in violation of 21 U.S.C. §§ 841(a)(1), 846, 952(a), 963 (1976). We affirm the convictions and sentences.

## I.

On September 24 or 25, 1980, United States customs agents discovered heroin packed inside baseballs in a shipment that had arrived at O'Hare Airport in Chicago, Illinois, from Pakistan. Federal agents contacted the addressee, Javed Butt, who said the shipment was for Arshad Ali Malik (Ali). Butt told agents about arrangements for the transfer of the baseballs to Ali. On October 16, 1980, Butt met Ali and gave him a shopping bag with the baseballs in it. Ali met Khalid Yousaf Malik (Yousaf) and gave him the bag with the baseballs. The Maliks went into an apartment. Ali left the apartment a few minutes later and was arrested by a federal agent. A few minutes thereafter Yousaf left the apartment and he too was arrested. Federal agents later searched the apartment pursuant to a search warrant, and found the baseballs. They seized the baseballs, other items in the Pakistani shipment, and papers and documents of the Maliks.

The Maliks were taken to the Metropolitan Correctional Center (MCC), where they had conversations with another inmate which produced damaging evidence. The inmate, Michael Richards, had been an informant for the FBI regarding the interstate transportation of stolen property. The FBI had promised Richards, who was Scottish, air fare to England. The FBI learned that Richards was a bank robbery suspect in Scotland. On October 16, 1980, FBI agents served Richards with an extra-

* The Honorable Floyd R. Gibson, Senior Circuit Judge, United States Court of Appeals for the    Eighth Circuit, sitting by designation.

dition warrant and placed him under arrest. Richards was placed in the MCC. Richards at this point was upset with his arrest and incarceration, apparently believing that he deserved better treatment from the FBI.

The Maliks had several conversations with Richards between October 16 and October 30. The Maliks tried to make a deal with Richards in which Richards would supply bond money for the Maliks in exchange for heroin. During the course of the conversations they told Richards how they imported heroin in baseballs, and that the heroin was so potent it killed a user. Richards then realized he might be able to help himself by providing the FBI with the information he received from the Maliks.

Just prior to October 30, Richards attempted to call an FBI agent with whom he had worked when he was an informant. The agent was not in, so Richards left messages asking the agent to call him. On October 30, that agent and another FBI agent met with Richards. Richards told the agents about the conversations with the Maliks. The agents told Richards to keep his ears open. Subsequently, Richards met with Drug Enforcement Administration (DEA) agents and Assistant United States Attorneys, describing his conversations with the Maliks. The DEA agents agreed to tell British authorities about Richards's cooperation.

After Richards had more conversations with the Maliks and government authorities, the DEA provided some of Yousaf's bond money. Richards had told Yousaf the money was supplied by a friend of his, and Yousaf had agreed to give the friend heroin in exchange for the bond money. On December 10, 1980, Yousaf was released on bond and was met by a DEA agent who identified himself as Richards's friend. Yousaf did not deliver heroin, but told the agent he could supply him with 100 kilograms per month. When it appeared that Yousaf was not going to deliver heroin, the agent had another DEA agent approach and arrest Yousaf. After his arrest, Yousaf told the agents he would tell them where the heroin was if they would not prosecute him.

The Maliks moved for dismissal of the indictments or suppression of the evidence based on the Government's post-arrest activities. The district court denied these motions. The Maliks reached a plea agreement wherein they pleaded guilty but reserved the right to withdraw their pleas if an appellate court granted them relief. The district court sentenced each defendant to concurrent fifteen-year sentences on each count in which he was named, and ordered that defendants receive special parole terms requiring their deportation upon their release. The district court said it was imposing the sentence because: "I think prison sentences, in many cases, might send a message, and I think we should send a message to the people in the Mideast that if they come to the United States and they engage in this kind of conduct, they are going to be severely punished."

## II.

The Maliks raise four points on appeal. Their principal contention is that the Government created a situation in which Richards was likely to induce incriminating statements, in violation of the Maliks' right to counsel. The district court found that Richards was a Government informant, except between the time of his arrest (October 16) and his meeting with the FBI (October 30), so the Maliks' appeal is focused on the October 16–30 time period.

The parties agree that where a defendant has been formally charged and the Government deliberately elicits incriminating statements from the defendant, such statements are inadmissible because they were attained in violation of the defendants' right to counsel. *See United States v. Henry*, 447 U.S. 264, 274, 100 S.Ct. 2183, 2189, 65 L.Ed.2d 115 (1980); *Massiah v. United States*, 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246 (1964). In *Henry*, Government agents contacted an inmate at the jail where Henry was awaiting trial for a bank robbery. The inmate had been an FBI informant in the past. The record did not make clear whether the inmate was

contacted for the purpose of acquiring information about Henry. During the course of the contact, a Government agent told the inmate to be alert to statements made by other prisoners, but not to initiate conversations with Henry about the robbery. The inmate later provided the agent with information which incriminated Henry and was paid.

■ In determining that the informant's statements were inadmissible as a violation of Henry's right to counsel, the Court characterized the issue as whether a Government agent deliberately elicited incriminating statements from Henry. 447 U.S. at 270, 100 S.Ct. at 2187. The Court noted three important factors: (1) the inmate was acting under instructions as a paid informant of the Government, (2) the inmate was ostensibly no more than a fellow inmate of Henry's, and (3) Henry was in custody when he made the statements. *Id.* The last two factors are clearly present in the instant case. The district court held a hearing on the presence of the first factor and concluded that Richards was not an informant acting under instructions from the Government from October 16 to 30. To find for the Maliks, we must either reverse the district court's finding as to Richards's status, or hold as a matter of law that *Massiah* and *Henry* extend to situations where potential informants elicit incriminating information by their own initiative.

We have a limited scope of review of the district court's factual determination that Richards was not a Government informant from October 16 to October 30. We apply the "clearly erroneous" test, so we will not interfere with the district court's finding of fact unless there is not substantial evidence in the record to support the district court's conclusion. *United States v. Sells*, 496 F.2d 912, 913–14 (7th Cir. 1974); *United States v. Tallman*, 437 F.2d 1103, 1105 (7th Cir. 1971). There is substantial support in the record for the district court's conclusion regarding Richards's status. There was testimony indicating that Richards felt double-crossed when he was arrested after having been an effective informant. There was testimony that Richards initially actually planned to make a deal with the Maliks, but then decided he had more to gain by becoming an informant. The finding that Richards was not an informant between October 16 and October 30 is amply supported by the record.

Likewise, we do not find for the Maliks as a matter of law. We refuse to extend the rule of *Massiah* and *Henry* to situations where an individual, acting on his own initiative, deliberately elicits incriminating information. In *Henry*, the Court specifically referred to the Government's role as being an important factor. 447 U.S. at 270, 100 S.Ct. at 2187. The Maliks suggest that the Government must go to extraordinary lengths to protect defendants from their own loose talk; they suggest that potential informants be segregated from other inmates. We do not believe that the Sixth Amendment right to counsel requires the Government to take such steps.

### III.

The Maliks also complain that the search warrant for their apartment was too broad in allowing the agents to seize papers and documents as well as the baseballs.

■ A warrant must provide a particular description of things to be seized; general warrants are prohibited by the Fourth Amendment. *See, e.g., Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976); *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). The warrant in the instant case was sufficiently specific. The items listed in the warrant, which included "books, papers, [and] documents" as well as the baseballs and other items in the shipment from Pakistan, all related to drug dealing. The affidavit in support of the search warrant described in detail the facts surrounding the discovery of the heroin. In light of the information before the magistrate, the search warrant met the Fourth Amendment's specificity requirements.

## IV.

The next issue applies only to Yousaf. He argues that statements he made to the undercover DEA agent while he was out on bond should be suppressed because admission of them violates his Sixth Amendment right to counsel.

■■■ The Government was investigating a crime other than the importation of the heroin in the baseballs. Yousaf was not, in the instant proceeding, charged with the crime then under investigation, and the statements were not admitted by the district court in this trial. Therefore, there is no basis for Yousaf's appeal on this issue. And of course the Government has the right to make other criminal investigations. *Hoffa v. United States*, 385 U.S. 293, 306–09, 87 S.Ct. 408, 415–17, 17 L.Ed.2d 374 (1966); *United States v. Merritts*, 527 F.2d 713, 716 (7th Cir. 1975).

## V.

■■ The Maliks' last argument relates to their sentences. They argue that the district court's statement that it wanted to send a message to the people in the Mideast shows the sentences were based on unconstitutional considerations: residency and citizenship. They also argue that the court improperly considered evidence that was presented in Yousaf's other case (based on the statements while he was out on bond). Yousaf was acquitted in the other case.

We conclude that the sentence was not induced by improper considerations. The district court was merely articulating the general deterrence that is integral to any imposition of incarceration. The court intended to send a message to others involved in the Maliks' heroin organization. The court stated that the sentence was harsh because the crime was severe. As to the testimony in Yousaf's other case, the court stated that it did not consider that testimony in sentencing.

Having considered the Maliks' arguments on appeal, we affirm the judgment of the district court.