Cheshire
No. 82-196

THE STATE OF NEW HAMPSHIRE

v.

ROBERT F. SCARBOROUGH

December 29, 1983

366

*Gregory H. Smith*, attorney general (*John A. Malmberg*, assistant attorney general, on the brief and orally), for the State.

*William H. Kennedy*, of Keene (*Lawrence G. Brann* on the brief and orally), for the defendant.

BROCK, J. The defendant was convicted after a jury trial in the superior court on a charge of robbery, under RSA 636:1. In this appeal, he argues that the Court (*Pappagianis*, J.) erred in denying his motion to suppress his confession, alleging that the police obtained the confession in violation of his right to counsel under the sixth and fourteenth amendments of the United States Constitution and part I, article 15 of the New Hampshire Constitution. He also argues that the Trial Court (*Contas*, J.) erred in its charge to the jury regarding the confession. We find no error and affirm.

The defendant was arrested for robbery on May 7, 1981, indicted on May 21, 1981, and arraigned on June 5, 1981. At the defendant's arraignment, the court appointed Attorney William Kennedy to represent him. The defendant was then released on personal recognizance.

Four days later, on June 9, 1981, the defendant signed a confession, under circumstances discussed below. Prior to trial, he moved

to suppress that confession. After a hearing, the superior court denied the motion. The confession was introduced into evidence at trial, and the defendant was found guilty and sentenced to a prison term of not less than three and one-half or more than seven years. This appeal followed.

On June 9, 1981, the defendant made a telephone call to the Winchester Chief of Police, and the chief subsequently picked up the defendant at his residence and drove him to the police station, where the defendant dictated and signed an inculpatory statement. There was conflicting testimony at the suppression hearing and at trial as to the defendant's purpose in making the call, but the record would support an inference that he intended to implicate himself and others in the robbery for which he had been indicted.

Before obtaining the defendant's confession, the Winchester police wisely informed him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). They also attempted to contact Attorney Kennedy at his office, but were told that he was then in the Jaffrey District Court. They made no further attempt to contact him that day. The police chief testified, and the jury could reasonably have found, that the defendant said he did not need to talk to his attorney, and that he wanted to give the police a statement immediately. The confession itself was partly a simple narrative by the defendant and partly a response to questions from the police officers present. Although the hearing judge found that the defendant is an alcoholic, several officers who knew him testified that he was sober when he made the statement.

The defendant's first argument is based on the final sentence of part I, article 15 of the New Hampshire Constitution, which reads:

> "Every person held to answer in any crime or offense punishable by deprivation of liberty shall have the right to counsel at the expense of the state if need is shown; this right he is at liberty to waive, but only after the matter has been thoroughly explained by the court."

The defendant's right to assistance of counsel attached no later than the time of his indictment on May 21, 1981. *See State v. Chaisson*, 123 N.H. 17, 28–29, 458 A.2d 95, 101–02 (1983). He argues that the above-quoted provision should be construed as requiring an explanation from the trial court before he could validly waive his right to have counsel *present* during any questioning. The judge ruled that "the language quoted has no bearing on a defendant's waiver of his right to have his counsel *present* on a particular occasion. Rather, the language quoted pertains solely to a defendant's

waiver of his right to have counsel *appointed.*" (Emphasis in original.)

■ We find the court's construction to be consistent with the plain meaning of article 15 and decline to adopt the construction advocated by the defendant. There was no need for the defendant to be brought before the court for an explanation of his rights before he could validly waive his right to counsel.

■ Because the defendant has asserted the right to counsel granted by both the State and Federal Constitutions, we look to our own constitution first, using decisions of the United States Supreme Court and other jurisdictions only as aids to our analysis. *State v. Ball*, 124 N.H. 226, 471 A.2d 347 (1983). Thereafter, we need only address federal issues insofar as federal law would provide greater protection, or if the United States Constitution would be offended by our decision. *Id.*

■ In this case, we can consider and determine the defendant's right to counsel under part I, article 15 of our State Constitution by reference to decisions in the federal context, because the defendant makes no argument that his right under the State Constitution is more extensive than that granted by the sixth amendment to the United States Constitution. We note, however, that the portion of article 15 quoted above, which was added to our constitution in 1966, covers a broader range of criminal defendants than are granted a right to counsel by the sixth and fourteenth amendments. *See Gideon v. Wainwright*, 372 U.S. 335 (1963); N.H. CONST. CONVENTION JOUR. 177–82 (1964). Accordingly, the discussion below of the right to counsel in a federal context only represents the minimum extent of the protections afforded by article 15. We will depart from that context when we are persuaded that such a departure is mandated by our constitution's clear intent to "stay in the van" of protecting our citizens' rights against governmental interference. *Id.* at 182; *see State v. Ball supra; State v. Nash*, 119 N.H. 728, 732–33, 407 A.2d 365, 368 (1979).

■■ The United States Supreme Court has held that "the right to counsel granted by the sixth and fourteenth amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him. . . ." *Brewer v. Williams*, 430 U.S. 387, 398 (1977). In this case, that right attached no later than the time the defendant was indicted on May 21, 1981. *See State v. Chaisson*, 123 N.H. at 28–29, 458 A.2d at 101–02; *Kirby v. Illinois*, 406 U.S. 682, 689–90 (1972). Any government

interrogation of him after that date, in the absence of counsel, would therefore be improper unless the defendant had waived his right to counsel. *Brewer v. Williams*, 430 U.S. at 401–04; *Massiah v. United States*, 377 U.S. 201, 204–06 (1964).

 This rule, which evolved from the Supreme Court's holding in *Massiah v. United States supra*, "has developed into a general rule excluding from use against a defendant at trial all statements obtained from him by the government *as a result of its failure to honor the accused's right to counsel.*" *United States v. Melanson*, 691 F.2d 579, 585 (1st Cir. 1981) (emphasis in original). The purpose of the rule is to prevent the government, after a defendant has been "brought before a tribunal with power to take his life or liberty," from deliberately interfering with that defendant's right to be heard by the tribunal on equal terms with his accusers. *Johnson v. Zerbst*, 304 U.S. 458, 462–63 (1938). However, totally spontaneous statements by the accused in the absence of his attorney, not elicited by government action, are admissible. *See United States v. Henry*, 447 U.S. 264, 276 (1980) (Powell, J., concurring); *United States v. Melanson, supra* at 585.

 In this case, the State does not argue that the defendant's statements were totally spontaneous; rather, it argues that he waived his right to counsel before making them. The burden is therefore on the State to prove "an intentional relinquishment or abandonment of a known right or privilege," a matter which depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. *State v. Nash*, 119 N.H. at 732, 407 A.2d at 368 (quoting *Johnson v. Zerbst, supra* at 464).

 The State must show that the defendant knew of his right to have counsel present, that he understood the consequences of any waiver of that right, and that he chose to waive it on his own without any inducement by the government. *See Brewer v. Williams*, 430 U.S. at 401–04; *United States v. Melanson*, 691 F.2d at 585. Such inducement need not involve "coercion or deceit," or exploitation of a defendant's "emotional unrest"; it can be anything that prevents his "full understanding of his legal posture." *See Carvey v. LeFevre*, 611 F.2d 19, 22 (2d Cir. 1979). Nor is it relevant whether the defendant was in custody or not, *Massiah v. United States*, 377 U.S. at 206, since the key question is simply whether he understood the enormous import of his action in giving up the right. *See generally Wyrick v. Fields*, 103 S. Ct. 394, 399–400 (1982) *(per curiam)*

(Marshall, J., dissenting) (majority did not reach sixth amendment issue).

The defendant urges us to adopt a rule established by the New York Court of Appeals on State constitutional grounds, viz., the rule that no waiver of an "attached" right to counsel can be valid unless made in the presence of counsel. *People v. Skinner*, 52 N.Y.2d 24, 436 N.Y.S.2d 207, 417 N.E.2d 501 (1980). The rule applies even to non-custodial interrogations. *Id.* at 31, 436 N.Y.S.2d at 211, 417 N.E.2d at 505.

The United States Supreme Court expressly declined to create such a rule, *Brewer v. Williams*, 430 U.S. at 405–06, and many State and federal courts have followed suit. *See, e.g., United States v. Monti*, 557 F.2d 899 (1st Cir. 1977); *State v. Carter*, 412 A.2d 56, 59–60 (Me. 1980); *Commonwealth v. Cote*, 435 N.E.2d 1047, 1051 n.9 (Mass. 1982); *Commonwealth v. Rigler*, 412 A.2d 846, 850 n.3 (Pa. 1980), *cert. denied*, 451 U.S. 1016 (1981). Those courts have held that a *per se* rule could conflict with the principle that a criminal defendant has the right to represent himself at trial, *State v. Carter, supra* at 60 (citing *Faretta v. California*, 422 U.S. 806 (1975)), or could allow too many defendants to enjoy the favorable consequences of their voluntary statements while avoiding the unfavorable ones. *United States v. Monti, supra* at 904 n.3.

■■■ We find these arguments persuasive and decline to adopt any *per se* rule as to whether counsel must be present for a valid waiver to occur. We similarly decline to follow those courts that have demanded, for proof of a valid waiver in *all* cases, "some additional indication [besides the giving of *Miranda* warnings] that the appellant understood what he was surrendering." *United States v. Brown*, 699 F.2d 585, 589 (2d Cir. 1983). We will continue to follow the rule of *Zerbst* (that a finding of waiver must depend on all "the particular facts and circumstances" in each case, *Johnson v. Zerbst*, 304 U.S. at 464), as expanded by our holding in *State v. Nash*, 119 N.H. at 733, 407 A.2d at 368. Once the right to assistance of counsel guaranteed by part I, article 15 of the New Hampshire Constitution has attached, *i.e.*, once judicial proceedings have been initiated against a defendant, that right can be waived only by means of "a voluntary oral or written *express* waiver. . . ." *Id.* (Emphasis added.)

■■ In this case, the judge presiding at the suppression hearing ruled that "beyond a reasonable doubt . . . the defendant understood his right to counsel, was given the opportunity to exercise that right, and intelligently, knowingly, and voluntarily waived that right before he voluntarily made the confession." Our review of the

record, "including the background, experience, and conduct of the accused," *Johnson v. Zerbst*, 304 U.S. at 464, shows that there was ample support for that ruling. The defendant had been arrested many times previously and was quoted as saying that he knew his rights better than the chief of police did. He "sought out a meeting with the government and spoke[ ] on his own initiative . . .", and there was no suggestion of "government overreaching or surreptitious activity." *See United States v. Melanson*, 691 F.2d at 585.

 Finally, he stated (according to the police testimony) that he did not need his attorney, but wished to make a statement immediately. A reasonable jury could have found that this constituted a voluntary, knowing, and intelligent express waiver of his right to counsel. There was some evidence that he attempted to strike a deal in exchange for his statement, but the record indicates that any such attempt occurred after he had waived his rights unconditionally.

 In view of the defendant's experience and his deliberate action in approaching the police, we reject defendant's argument that it was necessary in this case for the police to do more than give him the *Miranda* warnings in order to ensure that any express waiver of his right to counsel would be a knowing one. We need not decide whether more might be required in the case of a less experienced defendant, or one whose desire to initiate contact with the government was less apparent. *See generally Oregon v. Bradshaw*, 103 S. Ct. 2830 (1983) (fifth amendment case).

Finally, we hold that the defendant did not properly preserve his objection to the trial judge's charge to the jury on the issue of waiver. His objection made no reference to any distinction of constitutional rights or standards of proof. It only referred to the court's failure in its charge to name the defendant's appointed counsel, and that failure is not relevant to the question of waiver in this case. Having failed to preserve the issue at trial, the defendant may not raise it before this court. *State v. Niquette*, 122 N.H. 870, 873, 451 A.2d 1292, 1294 (1982).

*Affirmed.*

SOUTER, J., did not sit; the others concurred.