Hillsborough
No. 87-324

### THE STATE OF NEW HAMPSHIRE

v.

### JOHN GOSSELIN

December 12, 1988

244

*Stephen E. Merrill,* attorney general (*Brian T. Tucker,* associate attorney general, on the brief and orally), for the State.

*James E. Duggan,* appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J.   The defendant, John Gosselin, appeals his second degree murder conviction (RSA 630:1-b, I(b)) on the ground that the Superior Court (*Pappagianis,* J.) erred in refusing to suppress a tape-recorded statement that he made for his girl friend, Heidi McGillen. The defendant argues that McGillen served as an agent of the State throughout the entire period of his pre-trial incarceration, including the time when the tape recording was made, and that because of her agency relationship with the State, her obtaining of the tape recording violated his constitutional right to have counsel present at any post-indictment interrogation. Finding no error, we affirm.

The defendant's conviction stems from the death of two-year-old Brandon Bieniek, who died on September 13, 1985, from extensive internal head injuries. At the time of the child's death, the defendant lived with the victim and his mother in Manchester. Shortly thereafter, however, the defendant moved out.

Nearly six months later, in February 1986, the defendant developed a relationship with McGillen. On September 12, 1986, he and McGillen had an argument that resulted in his arrest for assaulting her. McGillen filed a report at the Hooksett police station and was asked both about the assault and whether she knew anything about Brandon Bieniek's death the year before. McGillen recounted that the defendant told her that he had killed the child, and she gave the same statement to the Manchester police later that

day. On September 19, 1986, the defendant was indicted for the second degree murder of Brandon Bieniek.

While giving her report to the Manchester police on September 12, McGillen indicated that she had letters from the defendant that implicated him in the Bieniek murder. She stated that she had lived with the defendant's parents in Sandown for a short period of time and had left the letters in their home. The police escorted McGillen to the parents' residence in order to retrieve the letters. McGillen testified that the parents were not at home, but that she and a police officer entered the unlocked residence and picked up the letters. The defendant successfully moved to suppress the admission of the letters on the ground that their seizure violated the fourth and fourteenth amendments to the U.S. Constitution and part I, article 19 of the New Hampshire Constitution. The trial court found that McGillen was acting as an agent of the State in procuring them and suppressed their admission into evidence. The State did not appeal this order. Additionally, on September 16, 1986, as a result of alleged threats made against her, McGillen agreed to have a telephone intercept device installed on her telephone to intercept calls from the defendant's mother and sister. No calls were received during the two-day period that the intercept device was operational.

On September 22, 1986, McGillen first met with assistant attorney general Kathleen McGuire, who at that time instructed McGillen not to have any contact with the defendant. In December 1986, McGillen again met with attorney McGuire. Although McGillen stated at that time that she had not had any contact with the defendant, she had in fact been visiting him regularly at the jail and was even contemplating marrying him. Shortly thereafter, McGillen's mother notified attorney McGuire about her daughter's contacts with the defendant, and McGillen again promised to refrain from contacting him. Despite her promise, McGillen testified that she contacted the defendant frequently between January and March, 1987, and that during her meetings with representatives of the attorney general's office she lied when she told them that she was not communicating with him.

In March, 1987, McGillen told the defendant that she did not know what to say to the defendant's attorneys, the police, or the attorney general's office. At that time, the defendant dictated the tape recording that is the subject of this appeal and gave it to his sister, who then gave it to McGillen. The tape recording directed McGillen to follow certain steps in order to recant her original story to the police. McGillen followed the defendant's instructions insofar as they directed her to go to the defendant's lawyers and tell them

that she had made up her story about the defendant's connection with Brandon Bieniek's murder. At trial, she testified that she was prepared to lie for the defendant in order to help him escape conviction.

At a meeting with representatives of the attorney general's office on March 31, 1987, McGillen explained that she had recently contacted the defense attorneys and lied to them in an attempt to help the defendant. It was at this meeting that she spontaneously stated that she had a tape recording made by the defendant, and turned it over to the attorney general's office. Following the denial of the defendant's motion to suppress the tape recording, the court allowed it to be played at trial.

McGillen also advised the State that she had more letters from the defendant, that the letters were at the home of the defendant's sister, and that she could get them. She recovered the letters, but the trial court suppressed their admission for the same reason it had suppressed the admission of the letters retrieved from the defendant's parents' house; namely, that McGillen, as an agent of the State, had illegally seized the letters in violation of the defendant's constitutional rights. The State did not appeal this order. Again, the State installed a telephone intercept device on McGillen's telephone and instructed her to record any telephone calls from the defendant.

In his motion to suppress the tape recording, the defendant contended that McGillen was at all times after September 12, 1986, acting in the capacity of an agent of the State. Her actions, he claimed, were intended to elicit incriminating statements from him, and should have been attributed to the State as an attempt to interrogate him in violation of his constitutional right to counsel. N.H. CONST. pt. I, art. 15; U.S. CONST. amend. VI.

■ The State concedes that the defendant's right to counsel had attached as of September, 1986, *see State v. Scarborough*, 124 N.H. 363, 368, 470 A.2d 909, 913 (1983); *State v. Chaisson*, 123 N.H. 17, 28–29, 458 A.2d 95, 101–02 (1983), *appeal after remand*, 125 N.H. 810, 486 A.2d 297 (1984). Thus, any interrogation of the defendant, in the absence of counsel, would be improper, *see Massiah v. United States*, 377 U.S. 201, 204–06 (1964), unless the defendant had waived his right to have counsel present, *State v. Scarborough*, *supra* at 369, 470 A.2d at 913. We agree that if McGillen was in fact an agent of the State at the time she received the tape recording, it would follow, on these facts, that her actions violated his right to counsel. Because we hold that the trial court was correct in finding that McGillen was not an agent of the State with respect

to the tape recording, however, we need not concern ourselves with the defendant's constitutional right to counsel other than to acknowledge that it had attached.

The question of whether or not a witness is an agent of the State for purposes of determining whether a defendant's right to counsel has been violated is one of fact to be made by the trial court. *See United States v. Taylor,* 800 F.2d 1012, 1015 (10th Cir. 1986), *cert. denied,* 108 S. Ct. 123 (1987); *United States v. Surridge,* 687 F.2d 250, 252 (8th Cir.), *cert. denied,* 459 U.S. 1044 (1982) (and cases cited therein). In this case, the trial court found that McGillen was not an agent of the State at the time she requested assistance from the defendant and the tape recording was made. On review, we will uphold a trial court's finding unless we conclude that it is clearly erroneous or contrary to the manifest weight of the evidence, viewed in the light most favorable to the State. *State v. Lewis,* 129 N.H. 787, 791, 533 A.2d 358, 361 (1986); *State v. MacDonald,* 129 N.H. 13, 21, 523 A.2d 35, 39 (1986).

The defendant argues that, "viewed in its totality," the evidence demonstrated that from the time of his indictment, the State used McGillen as an agent to procure evidence against him. Relying on the United States Supreme Court's decision in *United States v. Henry,* 447 U.S. 264 (1980), the defendant takes the position that McGillen contacted him during his pre-trial confinement and induced him to make the tape recording. The State, on the other hand, analyzes the relationship of the witness to the defendant vis-à-vis the relationship of the witness to the State, and argues that the trial court ruled correctly that McGillen was not an agent at the time the tape recording was made. The basis of the State's argument is that, between November, 1986, and March, 1987, McGillen repeatedly lied to the State about her relationship and contacts with the defendant, and contacted him despite express instructions from the State not to do so. Moreover, the State argues, she even went so far as to begin to play out her role on behalf of the defendant in an effort to deceive the defendant's attorneys and the State.

Because the defendant claims that his rights under both the State and Federal Constitutions have been violated, we will look to our State Constitution first, using decisions of the United States Supreme Court and other jurisdictions as aids in our analysis. Then, if necessary, we will look to the Federal Constitution to determine whether it affords the defendant greater protection. *State v. Ball,* 124 N.H. 226, 232, 471 A.2d 347, 351 (1983).

■ In *State v. Bruneau*, 131 N.H. 104, 552 A.2d 585 (1988), we concluded that the existence of an agency relationship under part I, article 15 of the State Constitution requires proof of "some affirmative action by a police officer or other governmental official that preceded the interrogation and can reasonably be seen to have induced the third party to conduct the interrogation . . . ." *Id.* at 109, 552 A.2d at 588. The crux of an agency relationship between a witness and the State lies in the fact that the agent is acting under a prior agreement with the State or is acting pursuant to a prior governmental request. *Id.* at 109, 552 A.2d at 588; *see United States v. Henry*, 447 U.S. 264, 270-71 (1980); *see also United States v. Taylor*, 800 F.2d at 1015-16; *United States v. Surridge*, 687 F.2d at 253-55; *United States v. Calder*, 641 F.2d 76, 78-79 (2d Cir.), *cert. denied*, 451 U.S. 912 and 454 U.S. 843 (1981). The only evidence of agreements here relates to the occasions in September, 1986, and April, 1987, at which time McGillen turned over letters to the State in violation of the defendant's right to be free from unreasonable searches and seizures, and allowed her telephone calls to be intercepted. Any agreement existing at that time, however, did not extend to the procurement of the tape recording. Furthermore, two significant facts counter the defendant's argument that these agreements evidence a continuing agency relationship between McGillen and the State. First, McGillen acted contrary to specific instructions from the State by secretly maintaining contact with the defendant; and, second, she embarked upon specific undertakings at the request of the defendant, not the State.

The circumstances surrounding McGillen's acquisition of the tape recording in this instance are similar to a witness' acquisition of evidence in *United States v. Malik*, 680 F.2d 1162 (7th Cir. 1982). In *Malik*, the witness, who had previously served as an agent for the government, was working on his own initiative with the defendants and was attempting to make a drug deal with them. *Id.* at 1165. Subsequently, he changed loyalties and decided to notify the authorities. *Id.* The court held that the witness was not acting as a government agent during the period of time in which he elicited incriminating evidence from the defendants, and that such evidence was properly admitted at trial. *Id.*

In the present case, there was evidence that McGillen did act as an agent in procuring letters and in allowing phone intercepts in September, 1986, and April, 1987. Between November, 1986, and March, 1987, however, it is clear that her loyalties were with the defendant. The trial court summarized the situation quite succinctly by stating that if McGillen was an agent for anyone

during this period of time, she was an agent for the defendant. The following colloquy between the prosecutor and McGillen illustrates the extent to which McGillen was committed to assisting the defendant:

"Q. Were you [McGillen] between the time you first met Kathy McGuire and the time you gave her the tape prepared to lie for [the defendant] to get him out of this, this charge?

A. Yes.

Q. All right. And weren't you keeping those communications with John Gosselin secret so that [the State] wouldn't find out?

A. Yes."

In *Maine v. Moulton*, the United States Supreme Court stated that "the Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached." *Maine v. Moulton*, 474 U.S. 159, 176 (1985). Such is the case here. McGillen blurted out to the State's attorneys that she had a tape recording from the defendant. She had not been requested to procure it, and indeed, if anything, procured it in order to assist the defendant and undermine the State's case. Despite her changing loyalties, it is clear that at the time she received the tape recording she was acting in concert with the defendant. On the basis of the record before us, it is clear that the trial court did not err in deciding that the witness was not an agent of the State at the time the defendant made the tape recording, and did not err in refusing to suppress the use of the tape recording as evidence.

We reach the same result under the sixth amendment of the United States Constitution. Federal case law describes agency status as entailing a "substantial relationship" between the alleged agent and the police, *United States v. Lynch*, 800 F.2d 765, 769 (8th Cir. 1986), *cert. denied*, 479 U.S. 1094 and 481 U.S. 1022 (1987), in the nature of an "agreement," *Lightbourne v. Dugger*, 829 F.2d 1012, 1020 (11th Cir. 1987), *cert. denied*, 109 S. Ct. 329 (1988). The preceding discussion indicates there was no such relationship or agreement between McGillen and the State.

In this case, the State merely benefited from the unsolicited fortuity of having the witness come to her senses before she committed perjury in a court of law. The defendant, having curried the witness' favor, and even having convinced her to assist him,

cannot succeed now with a claim that, since the object of his desire to spread misinformation has deserted him, the court should ignore their actual relationship in order to allow him to extricate himself from the very trap he created.

*Affirmed.*

All concurred.