**UNITED STATES of America, Plaintiff,**

v.

**Steven Marion TERRY, Defendant.**

**No. CRIM.02–22.**

United States District Court, S.D. Iowa, Central Division.

July 24, 2002.

Joseph G. Bertroche, Sr, Bertroche Law Offices, Des Moines, IA, for Steven Marion Terry.

Richard L. Richards, United States Attorney, Des Moines, IA, for U.S.

## ORDER RE: DEFENDANT'S MOTIONS TO SUPPRESS

LONGSTAFF, Chief Judge.

THE COURT has before it defendant Steven M. Terry's motions to suppress evidence seized pursuant to an alleged unlawful search and an alleged violation of *Franks v. Delaware,* filed April 5, 2002. The government has resisted both motions and the Court conducted a hearing on these matters on July 23, 2002. The matter is fully submitted.

Defendant Steven M. Terry is charged with violations of 18 U.S.C. § 2252(a)(2) (knowingly receiving, through interstate commerce, visual depictions of minors engaging in sexually explicit conduct) (Count I); and 18 U.S.C. § 2252(a)(4)(B) (knowingly possessing visual depictions of minors engaging in sexually explicit conduct which were produced using materials in interstate commerce) (Count II).

## I. *BACKGROUND*

United States Post Office officials were first alerted that defendant was engaged in allegedly illegal conduct on October 1, 2001, when Postal Inspector W. Kevin Marshall received a National Center for Missing and Exploited Children "Cyber-Tipline Report" stating that defendant had uploaded multiple pornographic images of children in a digital format to an electronic file folder on the website of *Yahoo.com.* Inspector Marshall was informed that defendant had established an account through *Yahoo.com* with *Shutterfly.* *Shutterfly* is a company, operating a web-site, that provides the digital equivalent of a mail-order photographic film processing service. *Shutterfly* downloads the digital images provided to it by its customers via the internet, converts the images from digital format to photographs, and sends the processed images to the customer via a traditional mail service. *Shutterfly* is a San Francisco, California based company.

*Shutterfly* converted the images uploaded by defendant to paper and provided them to Gary Welsh, a postal inspector in San Francisco, in nine (9) yellow and purple envelopes. Inspector Welsh in turn sent the nine envelopes containing the printed, paper images to Inspector Marshall. Upon Inspector Marshall's examination of the images he concluded that, "[s]ixty of the images ... clearly depicted minors engaging in actual or simulated sexually explicit conduct." Additionally, Inspector Marshall noted that some of the images were familiar to him and had been in circulation for some time; however, some of the images he had never seen before. The government suggests that law enforcement officers believed these *never-before-seen* images may have been originally produced by defendant.

Inspector Marshall contacted *Shutterfly* representatives, who explained to him the following facts:

1.  that defendant had opened an account with them on August 12, 2001, using a credit card;

2.  defendant was issued a "User Identification Number" to be used in all of his transactions;

3.  defendant used *Shutterfly's* services on multiple occasions, billing the charges to two different credit cards;

4.  when defendant opened his account and placed orders with *Shutterfly,* he used the screen name and the e-mail address of stevenmterry@webtv.com;

5.  defendant placed approximately thirty five orders between August 12, 2001 and October 1, 2001;

6.  during this time, defendant ordered the processing of approximately 1,596 photographs, of which 1,316 were unique prints and the remainder were duplicates.

On October 29, 2001, Inspector Marshall contacted *Citibank South Dakota* and *Nextbank,* the credit card companies whose credit accounts defendant used to pay for *Shutterfly's* services. Both companies confirmed defendant's use of credit accounts to purchase services through *Shutterfly.*

Inspector Marshall sought and obtained an anticipatory warrant for the search of defendant's home and vehicles to be executed upon the defendant's acceptance of

the controlled delivery of his *Shutterfly* order. The search warrant, issued by Magistrate Judge Bremer, authorized the search of:

a single-story frame structure with white siding known as 1630 55th Street, Des Moines, Iowa, 50310–1546 ... [and] a white wooden storage shed located on the premises; one (1) 1998 Chevrolet Bretta bearing Iowa license 588EOL, VIN: 1G1LV14W9JE647562; and one (1) 1951 Dodge Truck bearing Iowa license 116ELX, VIN: 80007886.

*See* Defendant's Exh. A. Inspector Marshall's application for the search warrant contained a two-page list of "property to be seized," which included enumerated categories of items which were:

... documents, books, ledgers, records, files, computer software, including but not limited to, disks, magnetic tapes, programs, computer printouts, and any and all correspondence in the name of Steven Marion Terry, and the e-mail name of stevenmterry@webtv.com and any other aliases and/or e-mail names he is using ... *in violation of 18 U.S.C. §§ 1461, 2251(a), 2252(a)(2) and/or 2252(a)(4)(B)* ....

*See* Defendant's Exh. A, Attachment A (emphasis added).

Following a controlled delivery of the nine envelopes containing the images described above, the search warrant was executed on November 5, 2001. In executing the warrant, Inspector Marshall and other agents seized the *Shutterfly* order which was the subject of the controlled delivery. Agents also seized camera equipment, *WebTV* equipment, a printer, VCR, e-mails, correspondence, financial documents, notebooks, magazines, CDs, diskettes, sexual devices, over 430 videotapes, and twenty-two handguns, rifles and shotguns.[1]

## II. DEFENDANT'S MOTIONS TO SUPPRESS

### A. Whether the Search Warrant Was Unlawful

Defendant claims that the search warrant was overbroad, lacking in probable cause, and authorized seizure of items that are not contraband and protected by the First Amendment.

#### 1. Suppression on the Basis of Lack of Probable Cause / Lack of Specificity

■ Defendant claims there was no probable cause to issue the anticipatory search warrant, and that the warrant lacked the specificity as to the particular items to be seized necessary to satisfy the Fourth Amendment. Defendant claims that Inspector Marshall had no evidence that defendant possessed or was utilizing the items seized and therefore no probable cause existed to issue a warrant for the seizure of such items. Defendant also urges this Court to find anticipatory warrants on the basis of controlled delivery of contraband to be a violation of the Fourth Amendment. Such arguments lack merit in light of established precedent in the Eighth Circuit and persuasive authority from a number of other circuits which have addressed these issues.

---

1. The Court is aware that the firearms were not specifically included in the warrant but that government agents seized them during the execution of the warrant out of concern that defendant was a danger to himself or others at the time of the search. The seizure of these firearms was not specifically addressed in defendant's motions to suppress and the Court understands that the government has offered to arrange a return of the firearms to a responsible third party. In light of these facts, the Court will not consider the seizure of the firearms in this ruling, but encourages the parties to reach an agreement with respect to their disposition.

In *United States v. Tagbering,* 985 F.2d 946, 951 n. 8 (8th Cir.1993), the Court observed:

> We note that warrants to search for drug paraphernalia and records based upon controlled deliveries of drugs have been upheld in numerous cases. *See Rey,* 923 F.2d at 1220–21 and cases cited. In general, we see no reason why a search warrant based upon a controlled delivery must be more limited in scope than a warrant based upon other kinds of probable cause unless, of course, the magistrate has reason to believe that the controlled delivery is a mere pretext for a broader, unjustified search.

In *United States v. Rey,* 923 F.2d 1217 (6th Cir.1991), the Court cites cases from the Second, Fourth, Seventh, and Ninth Circuits holding that probable cause existed to search for additional illegal items beyond those which are part of the controlled delivery. *See United States v. Garcia,* 882 F.2d 699, 704 (2nd Cir.1989); *United States v. Washington,* 852 F.2d 803, 804–05 (4th Cir.), *cert denied,* 488 U.S. 974, 109 S.Ct. 512, 102 L.Ed.2d 547 (1988); *United States v. Malik,* 680 F.2d 1162, 1165 (7th Cir.1982); *United States v. Dubrofsky,* 581 F.2d 208, 213 (9th Cir.1978). While the Second Circuit noted that the anticipatory warrant in *Garcia* might have been overbroad if the only evidence was the fact the dufflebags involved in the controlled delivery contained narcotics, the court found probable cause based on additional investigation conducted by the police which indicated a probability of additional prior drug-related activity at the location.[2]

In the present case, probable cause for a search warrant for items beyond the images contained in the controlled delivery existed. *Shutterfly* confirmed that it had processed approximately 1,300–1,500 images for defendant in 35 separate transactions. Additionally, when images are uploaded to *Shutterfly,* unlike a traditional photographic film processing situation, there are no original negatives. Rather, the digital files are copied from an original source and uploaded to *Shutterfly's* service. Because the *Shutterfly* service defendant used required that digital image files be copied/uploaded from some source, it was not unreasonable for Inspector Marshall to believe that defendant remained in possession of the original images.

Moreover, Inspector Marshall's judgement that some of the images contained in the controlled delivery were not in common circulation among collectors of child pornography is a reasonable inference to support the proposition that defendant was manufacturing prohibited images. Supported by that inference, there was adequate probable cause to issue a search warrant to attempt to secure the instrumentalities used in the commission of an alleged criminal act, including video tapes, correspondence, telephone listings, address books, mailing lists, other documents or records pertaining to communication between defendant and any other person, books, magazines, and computer data.

Probable cause is not determined "according to a fixed and rigid formula, but rather in light of the 'totality of the circumstances' made known to the magistrate, and a magistrate is allowed to draw reasonable inferences from the evidence presented." *Massachusetts v. Upton,* 466 U.S. 727, 728, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984). "[A] warrant is proper so long as the evidence as a whole creates a reasonable probability that the search will

**2.** The anticipatory search warrant in *Garcia* based upon a controlled delivery of dufflebags full of narcotics allowed the government to seize more than the narcotics in the dufflebags and included "cocaine, traces of cocaine, currency, drug records, and narcotics paraphernalia." *Garcia,* 882 F.2d at 704.

lead to the discovery of evidence." *United States v. Horn,* 187 F.3d 781, 786 (8th Cir.1999) (quoting *United States v. Humphrey,* 140 F.3d 762, 764 (8th Cir.1998)). Additionally, as noted by the Sixth Circuit in *Rey,* three other circuits "have rejected the claim that a warrant authorizing a search for drug paraphernalia as well as contraband is overbroad, *even though based only on the knowledge of a controlled delivery." United States v. Rey,* 923 F.2d, at 1220 (citing *U.S. v. Washington, supra; U.S. v. Malik, supra;* and *U.S. v. Dubrofsky, supra*) (emphasis added).

◼ Defendant further urges that the warrant lacked specificity as to the items which were to be seized. However, the warrant authorized the seizure of materials relating to and consisting of depictions of minors engaging in sexually explicit conduct, with references to the statutes criminalizing the possession of such materials (Exhibit A, Attachment A), as required by the Eighth Circuit to satisfy particularity under the Fourth Amendment. *United States v. Koelling,* 992 F.2d 817, 821 (8th Cir.1993) ("[W]hen a warrant describes the sought for material in the graphic terms of the statute on the sexual exploitation of children the material is described with all the particularity necessary to satisfy the Fourth Amendment.") (internal quotations omitted). "A warrant naming only a generic class of items may suffice if the individual goods to be seized cannot be more precisely identified at the time the warrant is issued." *United States v. Horn,* 187 F.3d 781, 788 (8th Cir.1999) (citing *United States v. Johnson,* 541 F.2d 1311, 1314 (8th Cir.1976)).

### 2. *Suppression on the Basis of First Amendment Protection*

◼ Defendant further seeks suppression of items seized on the basis of First Amendment protection. Defendant claims that the warrant on its face authorized the seizure of non-contraband items protected by the First Amendment. Defendant claims that a heightened level of scrutiny is required to seize items protected by the First Amendment, citing to *DePugh v. Penning,* 888 F.Supp. 959 (N.D.Iowa 1995), *Maryland v. Macon,* 472 U.S. 463, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985), and *Marcus v. Search Warrant,* 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961).

Of the ten enumerated categories of "property to be seized," items one and two specifically described items "pertaining to . . . any visual depiction of obscene, lewd, lascivious, and indecent sexually explicit conduct involving either minors and/or adults." (Exhibit A, Attachment A, ¶¶ 1–2). The other eight enumerated categories (¶¶ 3–10) in the "property to be seized" list attached to Inspector Marshall's application for the search warrant describe items which, according to defendant, are not illegal to possess.[3] According to defendant, because the application for the warrant sought the seizure of items legal to possess, the warrant was overbroad. However, the Court observes that all ten of the enumerated paragraphs are clearly limited by the requirement that such items be "in violation of 18 U.S.C. §§ 1461, 2251(a), 2252(a)(2) and/or 2252(a)(4)(B)." (Exhibit A, Attachment A). As such, the items authorized to be seized were not legal to possess and therefore not protected by the First Amendment.[4]

---

**3.** Such items include books, magazines, videotapes of adults engaging in sexually explicit activities, VCRs, televisions, monitors, photographs or drawings of minors either clothed or unclothed, computer data, computer hardware, computer software, instructional manu-

als, and *Shutterfly* orders including but not limited to the controlled delivery.

**4.** Even if some of the items which were seized would ordinarily be entitled to First Amendment protection, such items become illegal when they are "instrumentalities used in the

Further, the cases cited by defendant are distinguishable from the present case and are therefore unpersuasive for the proposition that the warrant in this case was deficient. *DePugh* is not directly relevant as it involved a § 1983 claim seeking a damages remedy for constitutional violations. There, plaintiff sought monetary relief for items seized without probable cause, rather than suppression of evidence in a criminal prosecution. More importantly, the warrant in *DePugh*, unlike the warrant in this case, "never explicitly state[d] what evidence of sexual exploitation is sought by the warrant . . . ." *Id.*, at 990–91. Here, the warrant was specifically directed at seizure of images depicting the sexual exploitation of children, as well as any instrumentalities used in connection therewith.

Neither *Macon*, 472 U.S. 463, 105 S.Ct. 2778, 86 L.Ed.2d 370, or *Marcus*, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127, support defendant's claims. The United States Supreme Court's statements in *Macon* concerning the procedures for issuance of a search warrant to seize materials which may enjoy First Amendment protection are dicta as it held that the police officers' actions in obtaining obscene magazines from a bookstore by purchasing them was not a Fourth Amendment search. No search warrant was issued in that case and nowhere does the Court hold that the magazines in that case were entitled to First Amendment protection. Similarly, *Marcus* is distinguishable from the present case as the officers there had a warrant which gave them broad authority to seize "obscene" materials, without any judgment by the court issuing the warrant that the materials actually met the legal definition of obscenity. *Marcus*, 367 U.S. at 731–32, 81 S.Ct. 1708. It is reasonably clear that the obscenity in *Marcus* did not involve depictions of minors engaged in sexually explicit activity. *Id.* at 722, n. 8, 81 S.Ct. 1708. Here, by contrast, the only judgment to be made is whether the materials depict minors engaging in sexually explicit activities. Under the First Amendment, possession of any sexually explicit depictions involving a minor may be presumptively illegal. *See New York v. Ferber*, 458 U.S. 747, 773, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (noting that possible rare exceptions—for educational, medical, or artistic works which may receive First Amendment protection—do not render overbroad a statute criminalizing images of children engaged in sexually explicit activity). Unlike a determination as to whether adult pornography is legally obscene, police officials can generally discern who is a minor and who is an adult. *Koelling*, 992 F.2d, at 822. ("The fact that some adults look like minors and some minors look like adults does not mean a warrant is overbroad. Most minors look like minors and most adults look like adults, and most of the time law enforcement officers can tell the difference. The Constitution requires no greater precision.").

Defendant also argues that some of the pictures in the controlled delivery were not depictions of minors engaged in sexually explicit activities and these pictures were therefore unlawfully seized. While it may be true that defendant had a right to possess and send in interstate commerce those pictures which do not depict children engaging in sexually explicit activities, those non-contraband items were packaged together with the contraband items, war-

commission of the crime, fruits of the crime . . . ." *See Golliher v. United States*, 362 F.2d 594, 599 (8th Cir.1966). Here, it is not unreasonable to consider otherwise legal videotapes and photographs as instrumentalities

used in the commission of a crime where the legal videos and photographs are used to camouflage or conceal contraband material (*i.e.*, depictions of minors engaged in sexually explicit activities).

ranting the seizure of the entire package. It would not seem unreasonable to view the non-contraband pictures as instrumentalities used in the commission of a crime. A police officer may have reasonably concluded that defendant included numerous non-contraband pictures in the files sent to *Shutterfly* in an effort to camouflage the illegal pictures. This situation is similar to pornographers using commercially produced videotapes to splice in segments of illegal video. In such cases, officers executing a warrant should not be forced to separate the wheat from the chaff prior to making a seizure. *See Horn,* 187 F.3d, at 788 ("The officers could not immediately identify which videos were most likely to fit the description of the items that they were authorized to seize, ... [because] individuals sometimes splice segments of child pornography into commercial tapes. Since we think they could not practically view more than 300 videos at the search site, we hold that the officers did not exceed the scope of the warrant by seizing Mr. Horn's video collection in its entirety for examination elsewhere."). Here, agents seized numerous photographs, magazines, and over 430 videotapes. If viewing the 300 videotapes was not practical or required at the time of the execution of the warrant in *Horn,* this Court has no doubt that the seizure for viewing of the numerous photographs, magazines and over 430 videotapes was proper given the reasonable scope of the warrant issued in this case.

**B.** *Whether there Was a Franks Violation*

In his separate motion to suppress evidence seized during the execution of the search warrant issued by Judge Bremer, defendant claims Inspector Marshall, in his application and affidavit for the warrant, knowingly made material factual misrepresentations and/or omitted material information in violation of the Fourth Amendment, citing *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Defendant claims that Inspector Marshall knew or should have known that his *WebTV* internet service precluded him from having any electronic data storage capacity in which electronic files could be stored. On this basis, defendant asserts that Inspector Marshall's application made material misrepresentations and/or omitted material facts necessary to establish the probable cause required by the Fourth Amendment as interpreted by the U.S. Supreme Court in *Franks.*

1.  *Statement of the Law Concerning Franks v. Delaware Exclusion*

Under the Fourth Amendment, law enforcement officers may not obtain a search warrant through statements that are intentionally false. *Franks v. Delaware,* 438 U.S. 154, 164–65, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). "Although a search warrant affidavit is presumed to be valid, a defendant may obtain a hearing on the validity of the warrant by making a substantial preliminary showing that the affidavit contains a material statement by the affiant which is deliberately false or which was made with reckless disregard for the truth." *United States v. Hollis,* 245 F.3d 671, 673 (8th Cir.2001) (citing *Franks,* at 170–71, 98 S.Ct. 2674). The defendant may also challenge the sufficiency of the search warrant based on intentional omissions of material facts from the affidavit. *United States v. Clapp,* 46 F.3d 795, 799 (8th Cir.1995).

■ To prevail on a *Franks* challenge based on alleged deliberate misrepresentations, a defendant must show that: (1) a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit; and (2) the remaining content of the affidavit is insufficient to establish probable cause. *United*

*States v. Wells,* 223 F.3d 835, 838 (8th Cir.2000). To prevail on a *Franks* challenge based on alleged omissions from the affidavit, a defendant must show that: (1) facts were omitted with the intent to make, or in reckless disregard of whether they could make, the affidavit misleading; and (2) the affidavit, if supplemented by the omitted information, could not support a finding of probable cause. *Id.* (citing *United States v. Humphreys,* 982 F.2d 254, 259 n. 2 (8th Cir.1992)).

### 2. *Discussion of the Facts and Law as Applied in the Present Case*

■ Defendant claims that Inspector Marshall should have questioned whether defendant's *WebTV* system had storage capacity. Defendant asserts that *WebTV* is incompatible with a computer and has no storage capabilities. Reasoning that "[e]very statement made in the affidavit tying the residence to the alleged crime was based on the possibility of computer storage, which was impossible" (Defendant's Brief, p. 4) defendant asserts that Inspector Marshall made material misrepresentations or omissions to Judge Bremer. Defendant further asserts that Judge Bremer, in the absence of the material misrepresentations and/or with the additional material information which was omitted, lacked probable cause to issue the search warrant. For multiple reasons, however, this line of reasoning fails.

First, no evidence has been offered to establish that digital JPEG images[5] cannot be uploaded to *Shutterfly* without having some type of data storage capacity. At the July 23, 2002 hearing, defendant's counsel informed the Court that defendant's use of *Shutterfly's* services was accomplished through uploading files directly

from internet sites or newsgroups and that defendant did not maintain any permanent digital files on his *WebTV* system. This belies defendant's argument that data storage capacity is required. While the Court cannot discern whether it is possible to upload files to *Shutterfly* from another webpage, *Shutterfly's* website only describes the process of uploading files from a data storage drive. *See* http://www.shutterfly.com/learn/ add_dig_pix.jsp. While at first blush, this may seem to support defendant's argument, it must be remembered that defendant allegedly uploaded digital images to *Shutterfly*. If it is not possible to upload files to *Shutterfly* without having data storage capacity, it was not unreasonable for Inspector Marshall and Judge Bremer to conclude that defendant may have used a separate computer with data storage capacity, not his *WebTV* service, to upload the files.

Additionally, merely because defendant gave a *WebTV* e-mail address when he set up his *Shutterfly* account does not preclude the possibility that he also had access to a traditional desktop or laptop computer with data storage capacity. Simply because he gave the *WebTV* e-mail does not establish that defendant uploaded the digital files he sent to *Shutterfly* using his *WebTV* internet service. In some respect, e-mail addresses are becoming like ubiquitous phone numbers. Many people have one or more home phone numbers, office phone numbers, cell phone numbers, pager numbers, car phone numbers, fax numbers, etc. Anybody can easily have more than one phone number and more than one e-mail account. The fact that a person tells another to call him back at 555–1234 does not mean that he called them from that phone number. By the same token,

---

**5.** JPEG is an acronym for "Joint Photographic Experts Group." The acronym represents the standard which was designed for compressing full color or grayscale still images of real-world scenes. JPEG images allow storage and display of digitized photographic images and photo-realistic art work.

the fact that defendant used stevenmterry@webtv.com as his e-mail account in setting up his *Shutterfly* account does not affirmatively prove he used his *WebTV* service to log on to and upload files to *Shutterfly.com.* Moreover, at the hearing in this matter, the Court asked whether *WebTV* can be accessed from a non-*WebTV* internet connection. Counsel for defendant's only response was that *WebTV* machines have no storage capacity, but defendant did not explain whether a traditional computer with storage capacity could log on to the internet via a *WebTV* account.

Finally, while it is undisputed that *WebTV*'s receivers do not have internal "storage capacity" in the sense that most desktop computers do (*e.g.* internal/external hard drives, floppy drives, zip drives, etc), it is possible to upload images in a digital format using either a digital camera with video output, or a standard VHS or 8mm video camera. *See* Defendant's Exh. D, p. 4; *see also* http://resourcecenter.msn.com/ access/MSNTV/FAQ. asp# 166. Had this information been added to the affidavit it would clearly provide additional support for a finding of probable cause to issue a warrant to search for both computer data (particularly on Compact-Flash or similar digital camera media) as well as videotapes. Either media provides storage capacity and can be used to upload files using *WebTV* internet service.

Based on the foregoing, this Court finds that no deliberate misrepresentations or omissions were made by Inspector Marshall in obtaining the search warrant. Further, even if misrepresentations or omissions were made by Inspector Marshall in his application for a search warrant, and modification of the application to delete any misrepresentations or add any omissions which were made, the remaining content of the application was clearly sufficient to establish probable cause for the issuance of the warrant in this matter.[6]

## III. CONCLUSION

For the reasons set forth above, defendant's motions to suppress evidence are DENIED.

Trial remains scheduled to commence Monday, July 29, 2002. Counsel should meet in chambers on that date at 8:30 a.m.

IT IS SO ORDERED.

---

**6.** Alternatively, even if the warrant was found to be invalid, this Court finds that the officers executing the warrant seized items in good faith reliance on Judge Bremer's finding of probable cause. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In order to defeat the *Leon* good faith exception, a defendant must show the four elements set forth by the Eighth Circuit in *United States v. Lindsey,* 284 F.3d 874, 878 (2002) have been met. No such showing has been made by defendant here.