Coos
No. 87-060

THE STATE OF NEW HAMPSHIRE

v.

ALAN O. ROBERTS

April 7, 1989

*Stephen E. Merrill*, attorney general (*Andrew W. Serell*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, appellate defender, of Concord, by brief and orally, for the defendant.

THAYER, J.   The defendant, Alan O. Roberts, was indicted by a Coos County Grand Jury for witness tampering, pursuant to RSA 641:5, I(b), for telling his estranged wife that their twelve-year-old daughter would not be returned to her unless his wife agreed not to testify against him on a pending sexual assault charge. The defendant was convicted following a jury trial and sentenced by the Court (*Morrill*, J.). The defendant now appeals.

The defendant challenges his conviction on two grounds: (1) that the trial court erred in failing to suppress certain of his statements; and (2) that the trial court erred in excluding testimony by the defendant that he kept his daughter in Vermont in order to protect her from abuse by her mother. For the reasons that follow, we affirm.

On June 13, 1986, Elizabeth Roberts of Gorham, the defendant's estranged wife, reported to the Gorham Police Department that her twelve-year-old daughter, Angie, was missing. Earlier that day,

Angie Roberts had called her paternal uncle and had told him that she wanted to leave home and be with her father, who was living in Vermont. Angie was angry at her mother for punishing her and slapping her and for not allowing her to attend an overnight party at a friend's house. Angie and her uncle had agreed that they would meet later, and that he would take her to her father. As arranged, Angie met her uncle, and he drove her to the Vermont border, where she met the defendant. The defendant then drove her to a relative's home in Danville, Vermont.

That evening the defendant called his wife. Mrs. Roberts told the defendant that Angie was missing and asked him if he had taken her. The defendant denied taking Angie and "acted really shocked that she was missing." According to Mrs. Roberts' testimony, the defendant then told her that she should "drop the charges so he could come over and help look for [Angie]." The defendant continued to call his wife every few minutes with the same request.

On June 15, the defendant called his wife, and she told him that she feared that Angie had been picked up hitchhiking. Mrs. Roberts testified that the defendant told her that perhaps she should search the woods "because if somebody had picked her up, they might have thrown her body up there." The following day, according to both the testimony of the defendant and that of his wife, the defendant again called his wife and told her that he had heard from Angie, and that Angie had said that she was all right but that she would not return home until Mrs. Roberts dropped the pending sexual assault charge against the defendant. The defendant repeated this request several times over the course of the next few days.

On June 21, 1986, Sergeant Gerald Marcou of the Gorham Police Department and New Hampshire State Police Trooper John Scarinza met in Vermont with Vermont State Police Trooper Van Dam to search for the girl. After visiting the homes of several of the defendant's relatives, they observed the defendant's vehicle parked in the driveway of his brother's house in Danville, Vermont. As Trooper Van Dam entered the house, the defendant ran out the back and into the woods. The defendant was pursued and apprehended and was taken back to the house, where he was arrested by Trooper Van Dam on an outstanding fugitive from justice warrant on a charge of witness tampering.

In the kitchen of the defendant's brother's home, Trooper Van Dam advised the defendant of his *Miranda* rights, and the defendant stated that he wished to call his attorney. The defendant tried to call his attorney three times but was unable to reach him. The police then advised the defendant that their purpose in being

there was to locate his daughter, and that they had information that he had been in contact with her and that he knew where she was. Sergeant Marcou then asked the defendant if he, in fact, knew where she was located. The defendant responded that he "could get in contact with her," and that he "could get the girl back." At that point, the police explained to the defendant that he could either appear before a Vermont magistrate and face extradition on the witness tampering charge, or return voluntarily with the police to New Hampshire, where he would be re-arrested upon crossing the border. The defendant was also told that he could get out of the cruiser at any time while in Vermont. The defendant agreed to return to New Hampshire stating that he "want[ed] to get this matter cleared up."

As Sergeant Marcou, Trooper Scarinza, and the defendant were leaving the driveway in the police cruiser, or at some point shortly thereafter, the defendant "started talking to [the two police officers]." They told him not to make any statements, advised him of his *Miranda* rights, and asked if he understood them. The defendant indicated that he did. The defendant then stated that he "could get in contact with his daughter" by calling a relative from a pay phone. During the return trip, while still in Vermont, the police stopped at a pay phone, and the defendant made a phone call to one of his relatives to arrange for his daughter's return.

When the police crossed the border into New Hampshire, they arrested the defendant and again advised him of his *Miranda* rights. They then drove the defendant to his lawyer's office in Lancaster, but his lawyer was unavailable. At some point during the trip, the defendant further stated that he "knew how to get the girl back but didn't want to get the people that had her involved in trouble." The police then brought Roberts to the Gorham police station, where he made a few phone calls, and within two hours, his daughter appeared at the police station.

Before trial, the defendant sought to suppress "any and all statements" that he may have made to the police while in custody, and "all evidence obtained by the State pursuant to, following, or as a result of any investigation by the State following its receipt of his said statements." The Trial Court (*Morrill*, J.) denied the defendant's motion. In its order, the trial court discussed only the statements made by the defendant while in the police cruiser, and found "beyond a reasonable doubt that [because] the defendant was not being questioned and volunteered the statements . . . there was no violation of [the] defendant's rights under the Fifth Amendment and Part I, Article 15 of the New Hampshire Constitution."

The defendant argues on appeal that the trial court erred in failing to suppress: (a) the defendant's initial statement, made in response to police interrogation conducted after the defendant had requested counsel, because it was elicited in violation of his *Miranda* rights and his right to counsel under part I, article 15, and (b) the defendant's subsequent spontaneous statements, made while in the police cruiser, and evidence of his ensuing actions taken relative to those statements, *e.g.*, telephoning his relative to arrange for the return of his daughter, because the police had failed to cure their initial violation by securing a waiver of the defendant's right to counsel. Although the trial court made a separate finding that the defendant's sixth amendment right to counsel was not violated, the defendant raises no separate sixth amendment claim on appeal.

In analyzing the admissibility of the defendant's statements, we first address the defendant's claim under the State Constitution. *See State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983). However, we decline to decide whether the defendant's initial statement was admissible, because the issue is not properly before this court on appeal. The defendant failed to present this issue to the trial court and to obtain a ruling on it. The defendant's written motion sought to suppress "any and all" of the defendant's statements. At the pretrial suppression hearing, however, the parties focused only on the statements made by the defendant while in the police cruiser. The defendant did not confront the State's witness, Sergeant Marcou, regarding the initial statement, nor did he refer to it specifically during his argument to the court at the close of the hearing.

The trial court's order indicates the court's perception that the defendant sought to suppress only the statements made while in the police cruiser. The trial court stated the issue to be decided as follows: "Defendant's claim is that he did not expressly waive his right under *Miranda v. Arizona* . . . and that his subsequent statements to the officers in the cruiser" were obtained in violation of his constitutional rights. The court then denied the suppression of these statements on the ground that the "defendant was not being questioned."

Despite the trial court's apparent failure to rule on the admissibility of the defendant's initial statement, the defendant, in his notice of objection to the court's order, failed to advise the court that it had overlooked a statement which he sought to suppress. The defendant objected solely on the ground that the admission of the "statements at issue" would violate the defendant's rights under

both the State and Federal Constitutions. We can only interpret this to mean that the statements at issue were those which the trial court had addressed in its order.

■ It is well settled that objections not raised before the trial court are deemed waived. *E.g., State v. Laliberte*, 124 N.H. 621, 621, 474 A.2d 1025, 1025 (1984); *Daboul v. Town of Hampton*, 124 N.H. 307, 309, 471 A.2d 1148, 1149 (1983). Thus, where the defendant failed to present this issue to the trial court, we will not address it on appeal.

We therefore proceed to a review of the admissibility of the statements which the defendant made while in the police cruiser. We find no error by the trial court in admitting these statements.

■ Once judicial proceedings have commenced against a defendant, as in this case, part I, article 15 of the New Hampshire Constitution entitles the defendant to the benefit of counsel during interrogation. *See State v. Bruneau*, 131 N.H. 104, 108, 552 A.2d 585, 587–88 (1988); *State v. Scarborough*, 124 N.H. 363, 368–69, 470 A.2d 909, 913 (1983). Absent a valid waiver of that right, any government interrogation of the defendant would be improper. *State v. Bruneau supra.* "However, totally spontaneous statements by the accused in the absence of his attorney, not elicited by government action, are admissible." *State v. Scarborough, supra* at 369, 470 A.2d at 913.

■ As the trial court found, and as the defendant concedes, the statements which the defendant made while in the police cruiser were not the product of police interrogation. The defendant argues, however, that these statements were tainted by the alleged initial violation because the police failed to cure their initial error by securing a valid waiver of the defendant's right to counsel before he made the statements in the police cruiser. The defendant's argument might bear some weight if the subsequent statements were the product of interrogation. *See State v. Nash*, 119 N.H. 728, 407 A.2d 365 (1979) (failure to obtain a valid waiver would prevent the police from conducting further interrogation). However, the admitted lack of further interrogation in this case renders the defendant's waiver argument meritless. We hold, therefore, that the admission of the statements made by the defendant while in the police cruiser. and any actions taken pursuant to those statements, did not violate his rights under part I, article 15 of the New Hampshire Constitution.

■ We find the defendant's claim under the fifth amendment to the United States Constitution equally unavailing. Indeed, under *Miranda v. Arizona*, 384 U.S. 436 (1966), "[t]he fundamental import of the privilege [against self-incrimination] while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated." *Id.* at 478; *see also Edwards v. Arizona*, 451 U.S. 477, 485–86 (1981) (interrogation must cease when defendant invokes right to counsel, but subsequent volunteered statements by defendant admissible); *State v. Reynolds*, 124 N.H. 428, 433, 471 A.2d 1172, 1174–75 (1984). Cases cited by the defendant involving subsequent police interrogation, therefore, are inapposite. *Cf. Oregon v. Elstad*, 470 U.S. 298 (1985) (police may cure initial *Miranda* violation by obtaining valid waiver of defendant's rights prior to commencing further interrogation); *State v. Dellorfano*, 128 N.H. 628, 517 A.2d 1163 (1986). We note further that the trial court's finding, that the defendant's subsequent statements were voluntary, is supported amply by the record, and the defendant raises no separate claim on appeal regarding this issue. *Cf. State v. Reynolds, supra* at 432, 471 A.2d at 1174.

■ In any event, should we have held that the trial court erred in admitting the evidence of the defendant's statements, the error could only have been harmless, because all of the evidence of the defendant's statements and actions, both in Vermont and in New Hampshire, merely establishes that the defendant knew where his daughter was located and had control over her whereabouts. These facts, however, were established at trial through the testimony of Elizabeth and Angie Roberts. The defendant's wife testified that the defendant had called her numerous times and indicated to her that he had been in contact with Angie. Angie herself testified that the defendant had met her on the day she ran away, had taken her to Vermont, and had visited with her virtually every day while she was there. She further testified that on one occasion he had driven her to New Hampshire, and that on another occasion he had taken her to a friend's camp in Vermont and had stayed with her there. Thus, based upon this evidence, we can say beyond a reasonable doubt that the admission of the defendant's statements, if error, did not affect the verdict and was thus harmless. *State v. Dellorfano*, 128 N.H. at 637, 517 A.2d at 1169.

The second issue raised by the defendant is whether the trial court erred in preventing him from testifying as to specific instances of abuse of his daughter by Mrs. Roberts as the reason for his taking Angie to Vermont and allowing her to remain there.

Before addressing the merits of the defendant's claim, we first consider whether the issue was properly preserved for appeal. The State claims that the defendant failed to make a timely objection or a contemporaneous offer of proof with respect to the evidence which he now alleges was improperly excluded by the trial court. We agree that the record is not without ambiguity, but upon a careful review of the record, we hold that the issue is properly before this court.

The State first objected to the defendant's testimony on direct examination that his daughter had called him "because my wife had been out drinking with two of her ——." The court ruled that the testimony was irrelevant, and defense counsel stated, "All right," and instructed the defendant to "stay away from that . . . ." The defendant nonetheless further testified that "my daughter was concerned about the situation at home. . . . She was being hit." The State objected, and a bench conference was held off the record.

When the defendant was then asked how he felt about Angie's request to leave home and stay with him, he testified that he felt that she should be permitted to do so because of "all the things that were going on at home. If I'm not allowed to bring them up ——." The State again objected and a second bench conference ensued. Defense counsel argued that Angie's reasons for leaving home were relevant to rebut the implication that the defendant had taken his daughter away in order to pressure his wife not to testify. The court ruled, however, that this testimony was irrelevant and hearsay. Defense counsel then stated that he wanted to introduce the defendant's reasons for taking his daughter to Vermont and for helping her to stay there for a week. When the trial court offered defense counsel an opportunity to make an offer of proof as to what the defendant would testify, defense counsel stated that the defendant would testify: that he took his daughter to Vermont at her request in order to make her happy; that he would have brought her home if she had wanted to return; and that Angie had never made such a request. The court ruled that the defendant could testify in accordance with this offer of proof, but that he could not testify "as to actions that his wife was taking at that time." The court then addressed the defendant himself to determine whether he understood the court's ruling. The defendant stated to the court, "[T]he reason I took my daughter was because she was being hit and being abused . . . and I think that's very important." The court responded that such testimony was hearsay and irrelevant.

Despite the court's ruling, the defendant subsequently testified, "I felt I was protecting . . . [Angie] as a father from being hit." When the court sustained the State's objection, defense counsel stated, "All I would say for the record, Your Honor, I think Angie did testify to that as a reason for her wanting to leave."

On cross-examination, the defendant again testified as to his wife's misconduct. At that point, the trial court admonished the defendant, "I've instructed you twice on that issue already and you've heard my instructions." A bench conference was then held during which defense counsel stated to the court, "I don't have any problem with the court's ruling. We have a witness here that is a little difficult to handle . . . ." Defense counsel then argued as to the admissibility of the remainder of a conversation, where the State had introduced part of the same conversation. The court responded that the State had not opened up the subject area for further testimony and that, in any event, the defendant's testimony was irrelevant, and ruled against the defendant, noting his exception.

The State urges us that the record indicates that defense counsel agreed with the court's exclusion of the defendant's testimony relative to his wife's misconduct, noting specifically defense counsel's statement that he had no problem with the court's ruling. However, viewing this statement in the context of the lengthy bench conference which had been held earlier relative to this issue, it is reasonable to interpret defense counsel's statement as indicating merely that he was informing the court that he was aware of the court's prior adverse ruling, and that he would attempt to comply with it for the remainder of trial.

Moreover, we find unavailing the State's argument that the defendant's offer of proof was insufficient because it did not include the defendant's testimony that his wife's abuse of his daughter prompted his taking Angie to Vermont. The defendant himself stated to the court that he would testify to the abuse as his reason for keeping Angie, and the court ruled specifically on the admissibility of that evidence.

Thus, based upon the record as a whole, it is apparent that the trial court was sufficiently apprised of the substance of the evidence, and of the defendant's objection to its exclusion, to enable the court to rule on the issue, and to correct at that time any error in its ruling, see N.H. R. Ev. 103(b); State v. Sands, 123 N.H. 570, 595, 467 A.2d 202, 217–18 (1983), and we therefore reach the merits of the defendant's claim.

The defendant argues that the trial court erred both in ruling that his testimony was hearsay and in ruling that it was irrelevant. We need not address the hearsay issue, however, because we hold that the trial court properly ruled that the testimony was irrelevant.

The determination of whether evidence is relevant is within the sound discretion of the trial court, and we will not reverse its determination absent evidence of abuse of that discretion. *State v. Hammell*, 128 N.H. 787, 789, 519 A.2d 307, 308 (1986). Here, the defendant wanted to introduce in evidence the manner and type of abuse to which his daughter had been subjected by Mrs. Roberts. At trial, defense counsel proffered the following explanation for the relevancy of the evidence: "I want to get to the reasons in [the defendant's] mind why [he] took Angie into Vermont and helped her to stay in Vermont for a week" and "the reasons why are relevant because . . . the State is attempting to make the strong implication that [the defendant took] Angie away from [Mrs. Roberts] to put pressure on [Mrs. Roberts] and . . . thereby tamper[ed] with a witness." The defendant, himself, in his colloquies with the court regarding the relevancy of the evidence, stated that it was relevant to show why he took his daughter to Vermont and allowed her to remain there. However, the issue at trial was not the defendant's purpose in keeping Angie in Vermont, but rather, the defendant's purpose in making the statements to his wife relative to dropping the pending sexual assault charge. Whether the defendant thought his daughter was being abused was irrelevant to a determination of the defendant's intent in making those statements unless he were to argue that his purpose in making the statements to his wife was somehow to prevent his daughter from having to return home and thus to be abused. This latter reasoning, however, was not a basis upon which the defendant argued relevancy at trial. Thus, the trial court did not abuse its discretion in determining that the defendant's testimony was irrelevant. Moreover, despite the court's ruling, evidence was introduced that Elizabeth Roberts had hit Angie. Angie herself testified that her mother had punished her by making her sit in a chair and slapping her. Further, the defendant's testimony that Angie "was being hit" was not stricken from the record, nor was the jury instructed to disregard it. Thus, the evidence was before the jury to consider if they had chosen to do so.

*Affirmed.*

All concurred.