Hillsborough
No. 91-259

THE STATE OF NEW HAMPSHIRE

v.

AL JAROMA

April 28, 1993

*John P. Arnold*, attorney general (*Diane M. Nicolosi*, assistant attorney general, on the brief and orally), for the State.

*Murphy, McLaughlin, Hemeon & Lahey, P.A.*, of Laconia (*Julie L. Lesher* and *Philip T. McLaughlin* on the brief, and *Mr. McLaughlin* orally), for the defendant.

THAYER, J. The defendant, Al Jaroma, was convicted of receiving stolen property after a jury trial in Superior Court (*Dunn*, J.). On appeal, the defendant argues that the trial court erred (1) in not suppressing evidence from a search of the defendant's garage because the affidavit in support of the search warrant contained reckless or intentional material misrepresentations of fact and because information contained in the affidavit was obtained as a result of two prior illegal searches; (2) in not suppressing statements made by the defendant to a third party during a telephone conversation in the presence of defense counsel that was overheard by a police officer; (3) in not suppressing statements made by the defendant to a police officer while the defendant was in custody after having been arraigned; (4) in not suppressing statements made by the defendant to a police officer three weeks after his arraignment; and (5) in not charging the jury as the defendant requested. We affirm.

After receiving a tip from Mark Eaton, a colleague of the defendant, that Jaroma's rented garage stall contained stolen property, Goffstown police applied for a warrant to search the garage. The search warrant was issued and executed, resulting in Jaroma's arrest. On July 26, 1984, Goffstown Police Officer Susan LeBel, who was not actively involved in the case, transported Jaroma from Manchester to the Goffstown District Court for arraignment. Jaroma filled out a fingerprint information form, but left blank the line for indicating use of an alias. LeBel then read Jaroma the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966), and he indicated that he understood those rights.

While awaiting arraignment, Jaroma and his counsel conferred in the presence of Officer Gary Shreve. The defendant asked Shreve if he could use the phone and Shreve allowed the request. In the presence of both his lawyer and Shreve, the defendant called someone named "Al." Jaroma told Al that the police had found the garage he rented, that he would probably have to go to court, and that the police would somehow have to find out about the rest of the "stuff" (the stolen property of which Jaroma claimed to have no knowledge).

After being arraigned, Jaroma was taken back to the police department by Officer LeBel, who reviewed the commitment order from the court indicating that Jaroma used the alias of "Al Halston." LeBel sat across a table from Jaroma and read the words, "Al Jaroma a/k/a Al Halston," from the commitment order and then looked at the fingerprint form. Jaroma then explained that he needed to use an alias to rent the garage because he had been arrested and felt "his own name was bad." After the explanation, LeBel verified Jaroma's birth date and address and transported him back to jail.

On August 13, 1984, Jaroma called the Manchester Police Department and asked to meet with Captain Paul Brodeur. Brodeur had participated in executing the search warrant and was aware that Jaroma had been arrested and arraigned. Later that day, Jaroma met with Brodeur and told him that the police were "barking up the wrong tree regarding the incident in Goffstown" and that Mark Eaton was responsible for any stolen property in the Goffstown garage stall rented by Jaroma. Jaroma spoke for approximately seventy minutes giving his rendition of the events culminating in his arrest. These statements were made voluntarily and were not in response to any questions asked by Brodeur. After Jaroma finished his soliloquy, Brodeur warned him of his rights under *Miranda* and asked him if he understood those rights. Jamoma indicated that he "knew them very well" and continued to speak with Brodeur and answered questions.

The defendant's motion to suppress his conversations with LeBel and Brodeur, and the conversation overheard by Shreve, was denied. The defendant also moved to suppress the fruits of the search, arguing that the affidavit in support of the search warrant contained intentional or reckless misrepresentations, and that information in the affidavit was obtained from two prior illegal searches. This motion was denied.

After his first trial ended in a mistrial, the defendant was retried on a single, consolidated information and was convicted in October 1988. On appeal, the defendant first contends that the superior court erred in denying his two motions to suppress, relying on both the State and Federal Constitutions. We will address the defendant's State claims first and turn to federal claims only if federal law provides additional protections. *State v. Ball*, 124 N.H. 226, 232, 471 A.2d 347, 351 (1983).

We first address the argument that the affidavit in support of the search warrant for the garage stall did not establish probable cause because it contained intentional or reckless misrepresentations. In

his affidavit in support of the search warrant, Officer Michael French of the Goffstown Police Department stated:

"12) Captain Gobin of the Goffstown Police Department speaks with Captain Brodeur of the Manchester Police Department who advises that a burglary [occurred] at the office of Attorney Tom Wingate on January 28, 1984. Reported stolen in this burglary was a Panasonic VCR. Al Jaroma is suspected in this burglary.

13) On January 8, 1984 a burglary was reported to the Manchester Police Department by JW Sowden Associates. Reported stolen in this burglary were the following items. (See Attached List). Al Jaroma is suspected in this burglary, due to Modus Operandi and types of items stolen.

14) On June 25, 1984 a burglary was reported by Calverts Furniture Store to the Londonderry Police Department. Reported stolen in this burglary were numerous pieces of furniture. (see attached list) Al Jaroma is suspected in this burglary, due to Modus Operandi and types of items stolen."

The defendant made a previous attack on these same paragraphs through an interlocutory appeal, arguing that they were conclusory and did not establish probable cause. We rejected this argument in *State v. Jaroma*, 128 N.H. 423, 514 A.2d 1274 (1986). The defendant now contends that these statements are material misrepresentations made intentionally or recklessly because the police reports on the burglaries referred to above did not name the defendant as a suspect. "The appropriate focus in attacking a facially valid warrant on the ground that it contains misrepresentations is whether it contains misrepresentations made by the *affiant*, the police officer." *State v. Carroll*, 131 N.H. 179, 191, 552 A.2d 69, 76 (1988); *see also Rugendorf v. United States*, 376 U.S. 528, 533 (1964). The question before us is whether the affiant made intentional or reckless misrepresentations.

Although we question the defendant's contention that because he was not named in the police reports he therefore could not be considered a suspect, we will assume that the statements that Jaroma was suspected in the three burglaries were intentional or reckless misrepresentations of material facts. This assumption does not avail the defendant's cause, however, because the information contained in paragraphs 12–14 was not based on the affiant's personal knowledge. French contacted other police departments to de-

termine the possible source of the reported cache of stolen goods in the defendant's garage. The defendant concedes that Captain Brodeur, not the affiant, is the source of the information regarding the *modus operandi* of the burglaries, which was given as a reason for suspecting the defendant. While the defendant contends that Captain Brodeur made material misrepresentations, he does not contend that it was unreasonable for the affiant to rely on the information provided by Captain Brodeur. *See Carroll*, 131 N.H. at 189, 552 A.2d at 74 (police officer can reasonably rely on information provided by other officer). The search warrant, therefore, was not tainted by the affiant's intentional or reckless misrepresentations, and the evidence seized was properly admitted.

██ In addition to his claim of intentional or reckless misrepresentations, the defendant's motion to suppress included the allegation that Brodeur's *modus operandi* information was based on two searches that "were found unlawful." No affidavit in support of this allegation was filed, nor was any court order attached to the motion. There was no discussion or any presentation of evidence on this claim during the suppression hearing, and the Trial Court (*Bean*, J.) did not address this claim in his order denying the motion to suppress. Although the burden of proving the admissibility of evidence rests on the State, "every motion to suppress evidence shall . . . set forth all the facts and grounds . . . upon which the motion is based." *State v. Hale*, 136 N.H. 42, 44, 611 A.2d 630, 631 (1992) (quotation omitted).

As was the case in *Hale*, no facts were set forth in the motion to suppress or at the suppression hearing to provide us with a record upon which relief can be granted. *See id.* at 46, 611 A.2d at 632. The defendant did not object to the trial court's order or ask for a rehearing with regard to his claim that Brodeur's information was based on illegal searches. *See State v. Roberts*, 131 N.H. 512, 516–17, 556 A.2d 302, 305 (1989) (objection to ruling on motion to suppress not raised before trial court deemed waived). We hold that the trial court properly denied the defendant's motion to suppress the fruits of the search.

We now turn to the issues raised by the defendant in his other motion to suppress. The defendant first argues that it was error for the Trial Court (*Flynn*, J.) to admit testimony from Officer Gary Shreve relating to the phone conversation the defendant had with "Al" while in a room with Shreve and the defendant's attorney. The defendant argues that the admission of this testimony violated his

right to counsel under part I, article 15 of the State Constitution and the sixth amendment to the Federal Constitution.

 "[T]he defendant's article 15 right to the assistance of counsel . . . attache[s] by virtue of the commencement of formal criminal proceedings." *State v. Bruneau*, 131 N.H. 104, 108, 552 A.2d 585, 587–88 (1988). Even if the defendant's right to counsel had attached, that right serves to protect communications between a defendant and the defendant's attorney, *see State v. Beaupre*, 123 N.H. 155, 158–59, 459 A.2d 233, 236 (1983), not the defendant's conversations with third parties where defense counsel happens to be in the same room. Federal law affords no greater protection in this area. *See Moran v. Burbine*, 475 U.S. 412, 428 (1986). Hence a separate federal analysis is not required.

The defendant next sought to suppress the statement he made to Officer LeBel when he realized that LeBel noticed that the defendant did not include his alias on the fingerprint form. At the time this statement was made, the defendant had already been arraigned, had exercised his right to counsel, and was in custody. LeBel did not warn the defendant of his *Miranda* rights after she escorted him from the court room, nor did the defendant waive those rights.

The defendant concedes that his statement was not the result of a question posed by LeBel, but argues that she employed "subtle coercive pressure" in obtaining the statement from him after he had exercised his right to counsel at the arraignment. When a defendant is in custody and requests the assistance of counsel, "police must cease all questioning and its functional equivalents." *State v. Guajardo*, 135 N.H. 401, 403, 605 A.2d 217, 219 (1992) (quotation omitted).

 "When officers utter words that they should know are reasonably likely to elicit a suspect's incriminating response, they engage in the functional equivalent of questioning." *State v. Dedrick*, 132 N.H. 218, 226, 564 A.2d 423, 428 (1989), *cert. denied*, 494 U.S. 1007, 1008 (1990). LeBel's communication with the defendant was not an interrogation or its functional equivalent. She was simply verifying information provided by the defendant when he was being booked. *See Pennsylvania v. Muniz*, 496 U.S. 582, 605 (1990) ("limited and focused inquiries" attendant to legitimate police procedure do not constitute interrogation); *State v. Sweeney*, 124 N.H. 396, 400, 469 A.2d 1362, 1364 (1983) (police conduct normally accompanying arrest and custody does not constitute interrogation). We note that the defendant's statement about renting the garage stall under another name did not divulge anything that was not already known by

police officers involved in the case and the arraigning court. Therefore, even if there had been an interrogation, the admission of the defendant's statement would have constituted harmless error.

The defendant also sought to suppress all statements made to Captain Brodeur at the Manchester Police Department on August 13, 1984. After the defendant had requested a meeting and spoke for approximately seventy minutes, Brodeur warned him of his *Miranda* rights. The defendant indicated that he understood his rights and continued to speak with Brodeur. The trial court denied the defendant's proposed finding of fact that the State had not proven a waiver of counsel for statements made by the defendant during the full course of his meeting with Brodeur; we view the court's determination as essentially finding that the State proved that the defendant waived the right to counsel.

On appeal, the defendant argues that the failure to suppress statements made during the entire meeting with Brodeur, before and after the *Miranda* warnings were given, deprived him of his right to counsel under part I, article 15 of the New Hampshire Constitution and the sixth amendment of the Federal Constitution. The defendant argues that in order for the State to use any of his August 13 statements as evidence, Brodeur should have obtained a waiver of the right to counsel before allowing Jaroma to say even one word, because Jaroma had invoked his right to counsel at his arraignment on July 26. In essence, the defendant seeks to have this court extend the requirement that police obtain a waiver of a previously-asserted right to counsel before questioning a defendant to a situation in which the defendant, who has been released from custody and is awaiting trial, voluntarily approaches the police and makes a statement.

We decline the defendant's request to extend the requirement of obtaining a waiver of a previously-asserted right to counsel to such an extreme. *See Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981) (accused who invokes right to counsel can be re-interrogated when he initiates further communication with police); *State v. Elbert*, 125 N.H. 1, 9, 480 A.2d 854, 859 (1984) (defendant may waive right to counsel after invocation if defendant initiates conversation); *Beaupre*, 123 N.H. at 158, 459 A.2d at 235 (valid waiver where accused initiates communication without prompting by police). Law enforcement personnel are required to honor the invocation of an individual's right to counsel, but they are not required to prevent that individual from voluntarily approaching a police officer and making injudicious statements. *See Michigan v. Harvey*, 494 U.S. 344, 352

(1990) ("nothing in the Sixth Amendment prevents a suspect charged with a crime and represented by counsel from voluntarily choosing, on his own, to speak with police in the absence of an attorney"); *Scarborough*, 124 N.H. at 369, 470 A.2d at 913 ("spontaneous statements by the accused in the absence of his attorney, not elicited by government action, are admissible").

■ The defendant's statements made before he was advised of his *Miranda* rights were properly admitted. The constitutional right to counsel requires that an individual who has invoked that right be entitled to have an attorney present during police interrogation. *See State v. Nash*, 119 N.H. 728, 731, 407 A.2d 365, 367 (1979). Brodeur testified that during the first seventy minutes of the meeting with Jaroma, he did not interview Jaroma, nor did he recall interrupting Jaroma's recitation to clarify any of his statements. There was no interrogation or its functional equivalent for the first seventy minutes of the meeting. "By its very nature, interrogation is distinct from passivity, and its proof requires the demonstration of something more than an [officer's] mere willingness to listen to a defendant's imprudent disclosures." *Bruneau*, 131 N.H. at 110, 552 A.2d at 589.

We now turn to the defendant's claim that he was denied his right to counsel by the admission of statements he made after Brodeur gave the *Miranda* warning. At the suppression hearing, Brodeur testified that he did not read the *Miranda* rights from a card, but repeated them from memory. When asked how he would advise someone of the *Miranda rights*, Brodeur responded:

> "Basically, the fact that they didn't have to talk to me if they didn't wish; they had a right to counsel; the right to a phone; they had a right to answer questions and stop answering at any time they so desired; and understanding these rights, are you willing to answer questions, understanding you have the right to counsel, are you willing to speak to me without counsel present at this time, and understanding these rights, do you want to proceed?"

Brodeur was asked, "Did you talk to [Jaroma] about the right to have counsel appointed if he could not afford one?" and responded, "I would have, yes." After Brodeur gave the *Miranda* warnings, Jaroma indicated that he knew his rights "very well," continued the conversation, and answered Brodeur's questions.

■ The defendant argues that the State did not prove an express waiver of his right to counsel under part I, article 15 of the State

Constitution and the sixth amendment to the Federal Constitution. As noted above, we view the judge's denial of the defendant's proposed finding of fact that the State did not prove a waiver as a ruling that the State did prove that the defendant waived his right to counsel. Such a finding by the trial court will not be overturned unless the manifest weight of the evidence, viewed in the light most favorable to the State, is to the contrary. *State v. Hurlburt,* 135 N.H. 143, 146, 603 A.2d 493, 496 (1991), *cert. denied,* — U.S. —, 112 S. Ct. 1770 (1992).

The defendant contends that the State must prove that statements were obtained from him after "an express waiver, either oral or written." *Nash,* 119 N.H. at 732, 407 A.2d at 368. Although the State does not contest the standard proposed by the defendant, we note that the decision in *Nash* was based upon an analysis of Nash's rights under *Miranda v. Arizona,* 384 U.S. 436, and the fifth amendment to the Federal Constitution. *Nash, supra* at 730, 407 A.2d at 367. For the purposes of this case only, we will apply the standard that the parties have asked us to apply; namely, that the right to counsel under part I, article 15 of our State Constitution, analogous to the sixth amendment to the Federal Constitution, must be expressly waived. *Cf. Scarborough,* 124 N.H. at 369, 470 A.2d at 914 (State must show intentional relinquishment of known right without government inducement to prove waiver of right to counsel under article 15 and sixth amendment); *Patterson v. Illinois,* 487 U.S. 285, 296–300 (1988) (waiver of right to counsel under both fifth and sixth amendments must be voluntary, knowing and intelligent).

■ The proof required to show an express waiver has been defined as a showing that "the defendant referred expressly to the right or answered a question that referred to it." *Elbert,* 125 N.H. at 9, 480 A.2d at 858. The defendant asserted his right to counsel at his arraignment on July 26, 1984. On August 13, the defendant responded to Brodeur's direct inquiry about whether he wanted to continue speaking with Brodeur without counsel present, and indicated that he understood his right to have counsel present. The defendant then knowingly and voluntarily chose to continue his discussion with Brodeur. In our view, this response to a question referring to the right to have counsel present meets the express waiver requirement defined in *Elbert.* We cannot say that the trial court's finding that the defendant waived his right to counsel was against the weight of evidence. *See State v. Lewis,* 129 N.H. 787, 791, 533 A.2d 358, 361 (1987).

■ The defendant also argues that in light of Brodeur's testimony at the suppression hearing, there was no evidence on which the

court could rely to find that Brodeur advised the defendant of his right to court-appointed counsel on August 13, 1984. According to the defendant, the *Miranda* warnings given during the August 13 meeting were legally inadequate and violated his rights under part I, article 15 of the State Constitution and the fifth amendment to the Federal Constitution. To be entitled to *Miranda* protections during an interrogation, an individual must be in custody. *Dedrick*, 132 N.H. at 224, 564 A.2d at 427. In his proposed findings of fact and rulings of law, the defendant conceded that he was not in custody during his meeting with Brodeur on August 13, 1984. Accordingly, the defendant was not entitled to be warned of his *Miranda* rights. There was no violation of his right against self-incrimination under either the State or Federal Constitution.

■■ The defendant's final argument is based on his request for jury instructions. "The scope and wording of jury instructions is generally within the sound discretion of the trial court." *State v. Plante*, 134 N.H. 456, 460, 594 A.2d 1279, 1282 (1991). "The trial court must grant a defendant's requested jury instruction on a specific defense if there is some evidence to support a rational finding in favor of that defense, but the court has no obligation to use the specific language a party requests, so long as the law is adequately stated." *State v. Letourneau*, 133 N.H. 565, 568, 578 A.2d 865, 867–68 (1990) (citations omitted). "[R]eversal of a jury verdict is unwarranted when a jury charge fairly covers the issues and law of a case." *Plante*, 134 N.H. at 460, 594 A.2d at 1283 (quotation omitted).

The defendant's position throughout trial was that he did not know that his garage contained stolen goods, so that he did not intend to permanently deprive the owners of their property. The defendant requested the following jury instruction:

> "In this trial, ladies and gentlemen, you have heard testimony that Mr. Jaroma did in fact rent the garage stall, that the property was in fact obtained in the stall, and that the property was owned by others. As I have stated previously, even if you find those facts beyond a reasonable doubt you still cannot find Mr. Jaroma guilty. You must also find that he knowingly retained the property and that he had a purpose to deprive the owners of it.
>
> That, ladies and gentle[men], is a theory of Mr. Jaroma's defense. His position is that he did not know the property was in the garage and did not, therefore, have a purpose to deprive. Again, I emphasize that the State has the burden of

proving beyond a reasonable doubt that he knowingly retained that property and that he intended to permanently deprive the owners of it."

The trial court instructed the jury as follows:

"Thus, for Mr. Jaroma to be guilty of a crime, he must have done the following two things: He must have mentally intended to do something that is criminal; and two, he must have physically acted to do something that is criminal. Now unless Mr. Jaroma both intended and acted to do something criminal, he has not committed a crime. This means that if he either did not mentally intend to retain the property, then you must find him not guilty. Specifically, you heard testimony that Mr. Jaroma did not knowingly intend to retain the property. If you do not find beyond a reasonable doubt that he knowingly retained the property, you must find him not guilty."

In explaining the seven elements of the crime, the court instructed the jury that it must find:

"[S]ix, that Mr. Jaroma kept the property with the purpose to deprive the owner of the property. This means that the defendant specifically intended to keep the property permanently, or to keep or use the property in such a way that a substantial portion of its economic value, use or benefit would be lost, or to dispose of the property in such a way that it would be unlikely that the owner would recover the property."

 The jury instructions adequately defined the law and presented the defendant's theory of defense. The trial court acted within its discretion in refusing to use the precise language requested by the defendant.

The trial court committed no error in denying both the defendant's motions to suppress and his requested jury instructions.

*Affirmed.*

All concurred.