Jaroma v. Cunningham                    CV-96-523-JD  08/13/97

UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE

Al Jaroma

        v.                             Civil No. 96-523-JD

Michael J. Cunningham, Warden,
New Hampshire State Prison


                            O R D E R


     The pro se petitioner, Al Jaroma, brought this petition for

habeas corpus against the respondent, Michael Cunningham, Warden

of the New Hampshire State Prison, challenging the

constitutionality of his state court conviction for retaining

stolen property.



                           Background

     On July 25 and 26, 1984, police executed a search warrant at

a storage stall in Goffstown, New Hampshire, that the petitioner

had leased since September 1982.  The petitioner subsequently was

indicted on twenty-two counts of retaining stolen property in

violation of N.H. Rev. Stat. Ann. ("RSA") § 637:7.[1]  In April

1988, the parties entered into a stipulation under which the

government agreed to charge the petitioner with only one count of

_____

     [1]Each count of the indictment charged the petitioner with
retaining the property of one owner.

retaining stolen property, and to <u>nolle</u> <u>prosequi</u> the twenty-two previously filed complaints.  In return, the petitioner agreed to stipulate that the property had a value of greater than $1000 and that it was "of another."  <u>See</u> RSA § 637:7.  He also waived any speedy trial argument he might have had on the timeliness of the consolidated charge and agreed, if necessary, to waive indictment on that charge.[2]  The stipulation was signed by the Assistant Rockingham County Attorney and the petitioner's trial counsel.  Although the petitioner's first trial on this charge ended in a mistrial, he was convicted of retaining stolen property on October 20, 1988.

On October 26, 1988, the petitioner's counsel moved to set aside the verdict due to the judge's refusal to give a certain jury instruction.  On November 8, 1988, the petitioner himself filed a separate motion to set aside the verdict and/or for a new trial, asserting, <u>inter</u> <u>alia</u>, that defense counsel had provided ineffective assistance and that the petitioner had not entered into the stipulation knowingly and voluntarily.

In May 1991, following the appointment of new counsel for the petitioner, the trial court denied the October 1988 motion regarding the jury instruction and sentenced the petitioner.  On

---

[2]The petitioner executed a waiver of indictment on the consolidated charge on April 11, 1988.

2

direct appeal, the New Hampshire Supreme Court rejected the petitioner's jury instruction claim, as well as his assertion that certain evidence should have been suppressed at trial. See State v. Jaroma, 137 N.H. 143, 625 A.2d 1049 (1993).

On January 20, 1993, the petitioner filed a "supplement to supplemental motion to set aside the verdict," claiming ineffective assistance of counsel due to trial counsel's failure to move to suppress evidence seized pursuant to a warrant that, according to the petitioner, did not authorize nighttime execution. At a hearing on this motion conducted on January 22, 1993, the petitioner, represented by counsel, withdrew all his claims of ineffective assistance of counsel, except for the claim regarding the nighttime search. The court issued an order denying the motion on February 1, 1993.

On March 10, 1993, the petitioner filed "supplemental motion II to set aside verdict and/or for new trial," challenging the validity of the stipulation. The motion was denied on March 16, 1993. On March 29, 1993, the state superior court denied the petitioner's motion to reconsider this decision, reasoning that at the January 22, 1993, hearing the petitioner had waived not only all of his ineffective assistance of counsel claims except the claim regarding the nighttime search, but also his claims concerning the validity of the stipulation. On May 12, 1993, the

3

petitioner, through counsel, filed a motion for a new trial, again challenging the stipulation, which the superior court denied on May 27, 1993. The New Hampshire Supreme Court affirmed that ruling in State v. Jaroma, 139 N.H. 611, 615, 660 A.2d 1131, 1133 (1995).

In March 1994, the petitioner filed a "motion to set aside verdict and/or motion for new trial," asserting that the consolidated complaint was duplicitous and otherwise insufficient. The motion was denied, and the New Hampshire Supreme Court declined to hear the petitioner's appeal of this decision pursuant to N.H. Supr. Ct. R. 7(1).

In July 1995, the petitioner filed another "motion to set aside verdict and/or motion for a new trial, alleging that the prosecution committed misconduct by permitting false evidence to be used at trial, and that his attorney provided ineffective assistance by not subjecting the state's case to adversarial testing. The court denied the motion, noting that the state had turned over certain exculpatory evidence to the petitioner, and pointing out that the ineffective assistance claims, with the exception of the claim regarding trial counsel's failure to contest the validity of the nighttime search, were waived in January 1993. The New Hampshire Supreme Court declined to hear the petitioner's appeal pursuant to N.H. Supr. Ct. R. 7(1).

On October 22, 1996, the petitioner filed for a writ of habeas corpus in state court, again asserting ineffective of assistance of counsel. The petition was denied on the ground that, due to the prior waiver, the petitioner could no longer assert the ineffective assistance of counsel claims advanced therein. The New Hampshire Supreme Court declined his notice of appeal pursuant to N.H. Supr. Ct. R. 7(1).

On May 17, 1996, petitioner filed the petition currently before the court. The petitioner separates his argument into six "issues," which are more properly characterized as five distinct claims. He claims that (1) the state used false testimony and evidence and otherwise committed prosecutorial misconduct; (2) the stipulation constituted an involuntary guilty plea because the trial judge did not conduct a colloquy; (3) the consolidated complaint was duplicitous and otherwise insufficient; (4) the trial judge failed to give a jury instruction that the petitioner had requested; and (5) trial counsel provided ineffective assistance.

## Discussion

28 U.S.C. § 2254(d) provides in pertinent part:

>      An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to

5

any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

      (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States

    . . . .

28 U.S.C.A. § 2254(d) (West Supp. 1997).

The First Circuit has proposed a test to determine whether a state adjudication is contrary to, or involves an unreasonable application of, clearly established Supreme Court case law. See Martin v. Bissonette, No. 96-1856, 1997 WL 280602, at *9-10 (1st Cir. May 29, 1997).[3] In considering the state court decision, the court must ask whether the United States Supreme Court has developed a rule to decide the petitioner's claim. See id. at *10. If the Supreme Court has expressed a controlling rule, then

---

[3]The court recognizes that the First Circuit has withdrawn its decision in Martin. See Martin v. Bissonette, No. 96-1856, 1997 WL 374793, at *3 n.3 (1st Cir. July 11, 1997) (revised opinion) (withdrawing opinion due to inapplicability of standard-of-review provisions of new habeas statute to cases filed before April 24, 1996). However, because the original decision in Martin provides the circuit's only guidance for interpretation of 28 U.S.C. § 2254(d), as amended, the court elects to apply the standard adopted therein. The court also notes the First Circuit's acknowledgment that, as a practical matter, the test articulated in Martin will rarely produce different results from an alternate approach in which courts apply the "contrary to" language of § 2254(d)(1) to pure questions of law and the "unreasonable application" standard to mixed questions of law and fact. Id. at *10.

6

the court must determine if the state court ruling is contrary to that controlling rule.  See id.  In the absence of a controlling rule, the court must determine whether the state court unreasonably applied Supreme Court precedent.  See id.  The court accepts the principle that lower court precedent can be used, where necessary, to determine whether a state court's application of federal law is unreasonable within the meaning of 28 U.S.C. § 2254(d).  See, e.g., United States ex rel. Gooch v. McVicar, 953 F. Supp. 1001, 1006 (N.D. Ill. 1997).

I.   False Testimony and Prosecutorial Misconduct

In his first set of contentions, the petitioner asserts that his conviction was obtained on the basis of false testimony, that crucial information was withheld from the jury, and that the prosecutor committed misconduct by failing to inform the trial court about the false testimony and by continuing to prosecute the case.  The petitioner focuses these claims on the testimony of Mark Eaton, who also had access to the storage stall, and who the petitioner contends was responsible for the property found therein.

Allegations of the knowing use of perjured testimony and the suppression of evidence favorable to the accused "sufficiently charge a deprivation of rights guaranteed by the Federal

Constitution, and, if proven, would entitle petitioner to release from his present custody." Pyle v. Kansas, 317 U.S. 213, 215-16 (1942); see also Napue v. Illinois, 360 U.S. 264, 269 (1959) (failure of state to correct testimony known to be false violates due process). In order to obtain relief on this ground, the petitioner must demonstrate (1) the testimony was false; (2) the state knew it was false; and (3) the testimony was material. See Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir.), cert. denied, 117 S. Ct. 487 (1996).

In the instant case, the court must determine whether the state court's adjudication of the petitioner's false testimony claim resulted in an unreasonable application of federal law. See Martin, 1997 WL 280602, at *13. A review of the record indicates that it did not. Indeed, the record merely indicates that the petitioner and Eaton related conflicting accounts of what occurred. Compare, e.g., Petition for Writ of Habeas Corpus at 2-3 (asserting that Eaton had key to stall, that Eaton owed petitioner $10,000, and that Eaton placed stolen property in the garage in an effort to frame petitioner) with Tr. at 14, State v. Jaroma (Apr. 8, 1986) (No. S-85-0528) (testimony of Eaton from first trial indicating that he did not have key to stall) and Tr. at 28, 31-45, State v. Jaroma (Oct. 18, 1988) (No. S-88-628) (testimony of Eaton from second trial in which he stated that his

business partner owed petitioner $2000 and asserted that he was not the one storing goods in the stall, but had merely helped the petitioner move certain goods in).  In addition, the record indicates that the prosecution disclosed to the jury, and the defendant had access to, certain information concerning Eaton's testimony that might have been exculpatory to the petitioner.  Because the petitioner has produced no evidence that Eaton's testimony was false, or that the prosecutor knew that Eaton's testimony was false, the petitioner's false testimony and prosecutorial misconduct claims must fail.

## II.  Validity of the Stipulation

The petitioner next contends that the stipulation into which he entered was constitutionally deficient because the court did not conduct a colloquy to ensure that the petitioner's waiver of his rights was knowing and voluntary.

The Supreme Court has held that a defendant must receive a full colloquy before pleading guilty to an offense.  See Boykin v. Alabama, 395 U.S. 238, 242 (1969).  However, the holding of Boykin only extends to those cases in which a party enters a guilty plea, see 395 U.S. at 243 (noting that a guilty plea is more than a confession, and "is itself a conviction"), and federal courts have held that an extended colloquy is not

9

required where a party does not stipulate to all the elements of an offense, see United States v. Muse, 83 F.3d 672, 681 (4th Cir.) (where defendant stipulated to two of three elements of charged crime and did not stipulate to "third, most critical element," stipulation did not constitute guilty plea requiring colloquy by trial judge under Fed. R. Crim. P. 11), cert. denied, 117 S. Ct. 261 (1996); see also Bonilla-Romero v. United States, 933 F.2d 86, 88 (1st Cir. 1991) (stipulation as to truth of all elements is tantamount to guilty plea and requires full colloquy). Because the petitioner did not stipulate to all the elements of the crime with which he was charged, the court finds that Boykin does not compel a new trial.

Nor is the court of the opinion that the state court resolution of the validity of the stipulation constituted an unreasonable application of Boykin and its progeny. The court reaches this conclusion based on the following facts: (1) the stipulation into which the petitioner entered was merely an acknowledgment of two of the seven elements of the offense charged; (2) neither stipulation involved conduct engaged in by the petitioner; (3) the elements to which the plaintiff stipulated were consistent with the defense that he offered, i.e. that Eaton placed the goods in the stall; and (4) the stipulation served the petitioner's strategic interests, including reducing the number of charges the petitioner faced and obviating the need

10

for the prosecution to introduce damaging testimony from the individuals whose property was stolen.  In addition, the record indicates that the stipulation was mentioned in the petitioner's presence repeatedly throughout the course of the petitioner's first and second trials, including during the course of both sides' opening and closing statements and the judge's instructions to the jury.  Thus, the court cannot deem unreasonable the New Hampshire Supreme Court's conclusion that a colloquy was not necessary in this case.  See State v. Jaroma, 139 N.H. at 614, 660 A.2d at 1132-33.

III.  Duplicity and Insufficiency of Consolidated Complaint

The petitioner next argues that the consolidated complaint was duplicitous because it alleged several offenses in one count and that the jury was not directed on which incidents to focus in determining guilt.  In addition, he argues that the complaint did not allege every element of the offense with sufficient specificity and failed to document who owned which pieces of property.

The pertinent language of the complaint alleges that the

> . . . respondent did on or about the 25th day of July 1984, at Goffstown, in the county of Hillsborough . . . , with force and arms did [sic]

11

knowingly retain certain property of the following
people and/or businesses:

| | |
|---|---|
| Micro Automation | Yankee Business Forms |
| Buckley Assoc. | Ring & Cavanaugh Co. |
| Thomas Wingate | Gillco |
| Dorothy Robie, | Mann Advertising |
|     d/b/a Robie's Store | |
| John Sowden | Aluminum Supply, Inc. |
| W.W. Paper Corp. | R & D Management |
| D. E. LaChance | Gordon Gilbert d/b/a/ |
| |     South End Iron Works |
| Ronald Burd & Co. | John Drouin, d/b/a |
| |     John's Drywall |
| Thornton Law Offices | Hutter Construction |
| American Towing Co. | |
| Joy of Cooking | |

including such assorted property as tools,
electronic equipment, office supplies, camera
equipment, jewelry, firearms, clothing, and other
materials, valued in total in excess of $1,000,
believing that they had probably been stolen, with
the purpose to deprive the owners thereof.

The plaintiff's arguments are without merit. Having
stipulated that the property at issue belonged to another and was
worth more than $1000, the petitioner cannot be heard to claim
that the jury did not necessarily agree unanimously as to which
property was not his or as to which property was worth more than
$1000. In addition, despite the petitioner's assertions to the
contrary, the complaint charges the petitioner with only one
offense -- retaining stolen property on July 25, 1984 -- and each
element of the offense is alleged. See RSA § 637:7(I) (1996) ("A

12

person commits theft if he receives, retains, or disposes of the property of another knowing that it has been stolen, or believing that it has probably been stolen, with a purpose to deprive the owner thereof."). In sum, use of the complaint neither was contrary to nor involved an unreasonable application of clearly established federal law.

IV. <u>Trial Judge's Failure to Give Requested Jury Instruction</u>

The petitioner's next contention is that the trial court erred in refusing to use a proposed jury instruction concerning the petitioner's theory of the defense and the state's obligation to prove that the petitioner knowingly possessed the property with the intent to deprive its owners thereof.

The petitioner's counsel proposed that the judge give the following instruction:

> In this trial, ladies and gentlemen, you have heard testimony that Mr. Jaroma did in fact rent the garage stall, that the property was in fact obtained in the stall, and that the property was owned by others. As I have stated previously, even if you find those facts beyond a reasonable doubt you still cannot find Mr. Jaroma guilty. You must also find that he knowingly retained the property and that he had a purpose to deprive the owners of it.

> That, ladies and gentle [sic], is a theory of Mr. Jaroma's defense. His position is that he did not know the property was in the garage and did not, therefore, have a purpose to deprive. Again, I emphasize that the State has the burden of proving beyond a reasonable doubt that he knowingly retained that property and that he intended to permanently deprive the owners of it.

13

Mot. to Set Aside Verdict for Failure to Give Accused's Theory of the Defense Instruction, Def.'s Requested Jury Instruction, No. 18, <u>State v. Jaroma</u> (October 26, 1988) (No. 88-S-628).

The judge instructed the jury as follows:

All crimes have at least two parts: One, an intent; and two, an act. In deciding whether a person is guilty of a crime, it is absolutely necessary for you to know both what the person's actions were and what his intentions were. The word 'intent' refers to what a person mentally believes his physical acts will accomplish. The word 'act' refers to a physical deed. Thus, for Mr. Jaroma to be guilty of a crime, he must have done the following two things: He must have mentally intended to do something that is criminal; and two, he must have physically acted to do something that is criminal. Now unless Mr. Jaroma both intended and acted to do something criminal, he has not committed a crime. <u>This means that if he either</u> [sic] <u>did not mentally intend to retain the property, then you must find him not guilty. Specifically, you heard testimony that Mr. Jaroma did not knowingly intend to retain the property. If you do not find beyond a reasonable doubt that he knowingly retained the property, you must find him not guilty.</u>

. . . .

Now, ladies and gentlemen, Mr. Jaroma is charged with the crime of receiving stolen property. The definition of the crime of receiving stolen property has seven parts. <u>The State must prove each part of this definition beyond a reasonable doubt</u>. Thus the State must prove the following: One, the accused person and no one else; <u>two, retained certain property; three, that he did so knowingly;</u> four, that the property was the property of another person. This means that someone other than the defendant had an interest in the property. Even if the defendant had an interest in the property, he cannot exercise unauthorized control over another person's interest in the property; <u>five, that Mr. Jaroma knew that the property had probably been</u>

14

stolen; six, that Mr. Jaroma kept the property with the
purpose to deprive the owner of the property. This
means that the defendant specifically intended to keep
the property permanently, or to keep or use the
property in such a way that a substantial portion of
its economic value, use or benefit would be lost, or to
dispose of the property in such a way that it would be
unlikely that the owner would recover the property; and
seven, that the property had a value in excess of one
thousand dollars.

Tr. at 105-08, State v. Jaroma (Oct. 19, 1988) (No. 88-S-628)
(emphasis added).

Review of the underlined portions of the instructions given
to the jury reveals that these instructions substantially
comported with the request made by petitioner's counsel, and that
the judge expressly mentioned the evidence adduced at trial
suggesting that the petitioner did not have the intent to commit
the crime with which he was charged. Furthermore, the judge
satisfied his obligation to list each element of the charged
crime, including knowledge and intent, and noted the requirement
that the state must prove each element beyond a reasonable doubt.
Accordingly, the court finds that the New Hampshire Supreme Court
engaged in a reasonable application of federal law when it
concluded that the trial court acted within its discretion in
declining to use the language requested by the defendant. See
State v. Jaroma, 137 N.H. at 154, 625 A.2d at 1056.

15

V.    Ineffective Assistance of Counsel

Finally, the petitioner makes several claims related to his assertion that he received ineffective assistance of counsel at the trial level.  The state argues that the claims are not cognizable on habeas because they are procedurally barred due to the January 22, 1993, waiver.[4]

It has long been settled that a federal court reviewing a habeas petition "will not review a question of federal law decided by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  E.g., Coleman v. Thompson, 501 U.S. 722, 729 (1991); see also Brewer v. Marshall, No. 96-2321, 1997 WL 398792, at *5 (1st Cir. July 21, 1997) (failure to meet state procedural requirement bars federal court from reviewing state court decisions under adequate and independent state ground doctrine).  This rule is premised on considerations of federalism and comity.  See Lambrix v. Singletary, 117 S. Ct. 1517, 1522 (1997).  To permit federal habeas review after procedural default would allow the petitioner

---

[4]The instant petition does not assert the one ineffective assistance of counsel claim that the petitioner did not waive at the January 22, 1993, hearing, i.e., his assertion that trial counsel should have moved for suppression on the ground that the warrant to search the petitioner's home did not authorize a nighttime search.

16

to circumvent state rules and then be rewarded with a day in federal court. See Coleman, 501 U.S. at 732. Accordingly, federal courts have held that a petitioner cannot bring a claim that is procedurally barred in state court unless he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." Id. at 750.

Although the current version of § 2254 is silent as to claims that have been procedurally defaulted under state law, the purpose of the adequate and independent state ground doctrine and the text of the statute suggest that the doctrine has survived the passage of the new act. The statute, as amended, permits a federal court to entertain a habeas petition only on the ground that the petitioner is being held in custody in violation of the Constitution or laws or treaties of the United States, 28 U.S.C.A. § 2254(a) (West 1994), and, absent waiver or certain extenuating circumstances, prevents a federal court from granting a habeas petition unless the petitioner has exhausted all available state court remedies, see id. § 2254(b) (West Supp. 1997). In addition, the statute precludes a federal court from issuing a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless

17

the adjudication of the claim" was contrary to or involved an unreasonable application of federal law, or involved an unreasonable determination of the facts of the petitioner's case. Id. § 2254(d) (West Supp. 1997). Taken together, these provisions do not appear to countenance the granting of habeas relief based on a claim that was procedurally defaulted and therefore not considered on the merits in state court. The court will not infer from Congress's silence as to the adequate and independent state ground doctrine an intent to disturb a judicially crafted rule that is consistent with the amended statutory scheme. Accordingly, the court proceeds to the question of whether the petitioner's ineffective assistance of counsel claims are barred by the adequate and independent state ground doctrine.

As noted above, the record indicates that at a hearing conducted on January 22, 1993, the plaintiff, acting through counsel, chose to forego the claims originally raised in his November 1988 motion to set aside the verdict, including the ones raised in the instant petition. This waiver served as the basis for both the July 14, 1995, denial of the plaintiff's motion for a new trial based on ineffective assistance of counsel, and the July 3, 1996, denial of his petition for habeas corpus on the

18

same ground.[5]  As the petitioner has neither offered evidence of cause for the default or of prejudice arising therefrom, nor demonstrated that the court's failure to consider his claims would result in a fundamental miscarriage of justice, his claims are barred by the adequate and independent state ground doctrine.

<u>Conclusion</u>

The petitioner's petition for a writ of habeas corpus (document no. 1) is denied.  The clerk is ordered to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

August 13, 1997

cc:  Michael J. Sheehan, Esquire
     Cynthia L. White, Esquire

---

[5]As noted <u>supra</u>, the New Hampshire Supreme Court declined the plaintiff's notice of appeal of both of these decisions.